UNITED STATES of America,
Plaintiff-Appellee,

v.

Joseph SOTO and Gilberto De Leon,
Defendants-Appellants.

No. 12131.

United States Court of Appeals
Seventh Circuit.

May 6, 1958.

1. The decree was predicated on the Civil Rights Act, 42 U.S.C.A. § 1483.

John Gannon, Anna R. Lavin, Chicago, Ill., for appellants.

Robert Tieken, U. S. Atty., John F. Grady, Asst. U. S. Atty., Chicago, Ill., John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., of counsel, for appellee.

Before FINNEGAN, HASTINGS and PARKINSON, Circuit Judges.

FINNEGAN, Circuit Judge.

After trial by jury and its verdict of guilty Soto and De Leon, defendants-appellants, appealed seeking reversal of the judgments of conviction grounded on counts three and four of a multiple count indictment, filed May 2, 1957, having this framework:

| Count | Statutory Violation | | Buyer | Narcotic Drugs | Defendants |
|---|---|---|---|---|---|
| 1. | I.R.C. 1954, § 4705(a) | Sale 2/7/57 | Singer | 18 grains Heroin | Olivo |
| 2. | 21 U.S.C. § 174 | Concealing 2/7/57 | ———— | Same | Olivo |
| 3. | I.R.C. 1954, § 4742(a) | Sale 3/18/57 | Singer | Heroin 10 lbs. | Del Rio, Olivo, Moody |
| 4. | 21 U.S.C. § 174 | Concealing 3/18/57 | ———— | Same | Same |
| 5. | I.R.C. 1954, § 4742(a)[1] | Sale 4/22/57 | Singer | 56 lbs. Marihuana | Soto, De Leon, Olivo |
| 6. | 21 U.S.C. § 176a [2] | Concealing 4/22/57 | ———— | 56 lbs. Marihuana | Soto, De Leon, Olivo |

1. Section 4742(a) provides: "It shall be unlawful for any person, whether or not required to pay a special tax and register under sections 4751 to 4753, inclusive, to transfer marihuana, except in pursuance of a written order of the person to whom such marihuana is transferred, on a form to be issued in blank for that purpose by the Secretary or his delegate." 68A Stat. 560.

2. Under the Narcotic Control Act of 1956, 70 Stat. 567, 570–571 it is provided, *inter alia:*
"Sec. 106. Smuggling of Marihuana.
"Section 2 of the Narcotic Drugs Import and Export Act, as amended, is amended by adding at the end thereof the following:

" '(h) Notwithstanding any other provision of law, whoever, knowingly, with intent to defraud the United States, imports or brings into the United States marihuana contrary to law, or smuggles or clandestinely introduces into the United States marihuana which should have been invoiced, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such marihuana after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or whoever conspires to do any of the foregoing acts, shall be imprisoned not less than five or more than twenty years and, in addition, may be fined not more than $20,000. For a second or subsequent offense (as

Counts three and four were dismissed on motion of the government, Moody and Del Rio were granted a severance, and the cause proceeded June 11, 1957 to trial on the remaining counts, and the verdict was returned June 17, 1957; Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 was decided June 3, 1957. Counsel for the two appellants claim reversible errors are present because: (1) the trial judge sustained, or countenanced, the prosecution's refusal "to turn over reports of testifying agents"; denied Soto and De Leon a severance, and refused to grant the defense motion for a directed verdict, (2) there were prejudicial remarks made by the prosecutor and government witnesses, and, (3) the evidence fails to support the verdict.

From what has already been stated it is apparent that counts three and four charge Olivo, Moody and Del Rio with a marijuana transaction of March 18, 1957, without naming either of the two defendant-appellants now before us. When the present case went to trial Olivo was defending on counts 1, 2, 5 and 6, but he alone was accused in counts 1 and 2 and with Soto and De Leon on the fifth and sixth counts. Singer's testimony, given for the government in his capacity as a treasury enforcement agent, concerned purchases of heroin: (1) from Olivo on February 7, 1957—the subject-matter of counts 1 and 2 and, (2) the marijuana transaction on April 22, 1957 involving Olivo and his co-defendants Soto and De Leon under counts 5 and 6.

The dismissal of counts 3 and 4 charging Olivo and, the Del Rio-Moody severance, precluded testimony by Singer regarding the March 18, 1957 transaction and, for those reasons, he related nothing about it.

To maintain its proof under the counts in issue the government, through the testimony of several federal narcotics agents, including Bernard Singer, and appellant's co-defendant Reynolds Olivo, showed inter alia, the following. After some negotiations of Singer with Olivo during the week prior to the indictment date, April 22, 1957, Olivo agreed to sell Agent Singer roughly 50 pounds of marijuana at seventy dollars per pound, and for that purpose Singer went to Olivo's house, 1408 West Harrison Street, Chicago, at 7 P.M. On his arrival in a government vehicle, Singer observed Olivo standing in front of his house talking with Soto and De Leon, waited for several minutes until those two appellants departed and until Olivo joined Singer. Following Olivo's directions, Singer drove to a point in the vicinity of 84th and Burley Streets, on Chicago's south side, where Olivo got out of the government vehicle and disappeared from Singer's view. Subsequently Soto and De Leon walked past Singer's automobile in the same direction taken by Olivo, and they also got out of Singer's sight, only to reappear several moments later, again passing Singer. Afterward, Olivo returned and told Singer to drive to 90th and Burley Streets, where, after waiting a few minutes, Singer asked, "What's happening here? Is somebody supposed to meet us here?" Olivo replied, "Yea(h), but I am not sure that I have got the right street corner." Five minutes later, when a Plymouth automobile came in view, Olivo said, "Well, there they go," and he directed Singer to follow that car. Following the Plymouth led back to 84th and Burley where both

determined under section 7237(c) of the Internal Revenue Code of 1954), the offender shall be imprisoned for not less than ten or more than forty years and, in addition, may be fined not more than $20,000.

"'Whenever on trial for a violation of this subsection, the defendant is shown to have or to have had the marihuana in his possession, such possession shall be deemed sufficient evidence to author-

ize conviction unless the defendant explains his possession to the satisfaction of the jury.

"'As used in this subsection, the term "marihuana" has the meaning given to such term by section 4761 of the Internal Revenue Code of 1954.

"'For provision relating to sentencing, probation, etc., see section 7237(d) of the Internal Revenue Code of 1954.'" 21 U.S.C.A. § 176a.

cars, the Plymouth and government vehicle, were there parked. Soto and De Leon got out of the Plymouth, went to the rear of it and opened the car trunk; Olivo asked Singer where he wanted the marijuana. Telling him to put it in the trunk, Singer then opened the government car trunk. Soto and De Leon removed three gunny sacks (containing 56 pounds of marijuana according to counsel's stipulation [3] in the trial court) from the Plymouth and placed them in the trunk of the Singer vehicle. After opening one package from each sack, Singer signaled several other agents waiting in the vicinity, and when they arrived Olivo, Soto and De Leon were arrested. This transfer of marijuana was made without a written order and the overt acts, just described, of Soto and De Leon are undisputed and witnessed. Olivo readily admitted the sale and transfer during his testimony given below. The defense of Soto and De Leon consisted solely of examining the government witnesses.

On cross-examination Singer testified that he made "routine" reports to the Bureau of Narcotics; that there were a "number of reports" made in this case. When this government witness was examined by counsel defending Olivo the following exchange, urged as the foundation for production of these reports, took place:

"Q. How often do you make a report? A. Only on those occasions when some importance occurs, such as the purchase of narcotics, would I make a report.

"Q. Well, do you make a report about how you are introduced to a man? Do you give a detailed explanation? A. Not necessarily, no.

"Q. Well, what type of a report did you make in this case? A. I made what I would consider a routine report.

"Q. When did you make that? A. I wouldn't know the date of the report.

"Q. Approximately? A. Well, there would be a number of reports made on this particular case. I don't know which one in particular you mean.

"Q. About how many reports? A. I couldn't say without looking at the file.

"Q. And do they all concern Olivo and these other two defendants? A. No.

"Q. In this particular case? A. I think that you will have to be a little more specific in referring to the file before I can answer your questions.

"Q. Well, as to what you have testified here as to the dates and the times and the bargaining over the price, did you make a report on that? A. I have just testified that I did not.

"Q. Well, what type of a report did you make? A. I would only make a report, I repeat, on those dates on which something of some importance occurred such as the purchase of the narcotic exhibits.

"Q. Well, what is your testimony about this particular case? You said you made three or four reports on this case? A. Possibly more than that are contained in the file. I don't know.

"Q. Do you have those reports with you? A. I do.

"Mr. Devitt: Your Honor, I would like to call for the production of those reports.

"Mr. Grady: The Government is going to object to that, your Honor. * * *"

Appellate counsel, acting on behalf of Soto and De Leon, press on us the paral-

3. Defense counsel for all three defendants stipulated that the 53 packages contained in Government Exhibit 5 "had been analyzed by the United States Chemist, and if the United States Chemist were to ap- pear * * * [and] testify, he would testify that * * * [these] bags contain marihuana, a total of 56 pounds of marihuana."

lel manifestations of policy they think are found in both Roviaro v. United States, 1957, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 and Jencks v. United States, 1957, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103.[4] At the outset, however, we underscore the uncontroverted evidence of possession, and concealment established on the record before us, and stress that this is a record barren of any firm showing of relevancy regarding "disclosure of an informer's identity, or of the contents of his communication." Indeed Mr. Justice Burton, delivering the Roviaro majority opinion wrote: "we believe that no fixed rule with respect to disclosure is justifiable." 353 U.S. 53, 77 S.Ct. 623, 628. It must be remembered that the unidentified informer in the Roviaro case was a material witness. An examination of the circumstances under which the Supreme Court made some statements in Roviaro v. United States, 1957, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639, quoted to us by defense counsel in the current appeal illustrates how inapposite their use by these defendants is to the instant question. In Roviaro the government, having virtually abandoned its position on Count 1 [26 U.S.C. § 2554 (a)], was struggling to maintain the conviction on Count 2, charging illegal transportation of narcotics under 65 Stat. 767, 768, 21 U.S.C.A. § 174, by reasoning that: " * * * the identity of the informer, in the circumstances * * * has no real bearing on that charge and is therefore privileged." 353 U.S. 53, 59, 77 S.Ct. 623, 627. The relevancy and materiality of testimony which might have been given by, or about, the unidentified—unproduced informer was evaluated in the setting of Count 2 under the particular factual situation pointed up by Mr. Justice Burton:

"The circumstances of this case demonstrate that John Doe's [the informer] possible testimony was highly relevant and might have been helpful to the defense. So far as petitioner knew, he and John Doe were alone and unobserved, during the crucial occurrence for which he was indicted. Unless petitioner waived his constitutional right not to take the stand in his own defense, John Doe *was his one material witness*. Petitioner's opportunity to cross-examine Police Officer Bryson and Federal Narcotics Agent Durham was hardly a substitute for an opportunity to examine *the man who had been nearest to him and took part in the transaction*. Doe had helped to set up the criminal occurrence and had played a prominent part in it. His testimony might have disclosed an entrapment. He might have thrown doubt upon petitioner's identity or on the identity of the package. He was the only witness who might have testified to petitioner's possible lack of knowledge of the contents of the package that he 'transported' from the tree to John Doe's car. The desirability of calling John Doe as a witness, or at least interviewing him in preparation for trial, was a matter for the accused rather than the Government to decide.

"Finally, the Government's use against petitioner of his conversation with Joe Doe while riding in Doe's car particularly emphasizes the unfairness of the nondisclosure in this case. The only person, other than petitioner himself, who could controvert, explain or amplify Bryson's report of this important conversation was John Doe. Contradiction or amplification might have borne upon petitioner's knowledge of the contents of the package or might have tended to show an entrapment.

---

4. For a discussion of some problems following in the wake of the Jencks opinion see 103 Cong.Rec. 14549 to 14554 (daily ed. August 26, 1957). See also

Sen.Rep. No. 981, reprinted in 2 U.S. Code Cong. & Admn.News, p. 1861 (1957), on S. 2377 now 71 Stat. 595 adding § 3500 to title 18 U.S.C.

"This is a case where the Government's informer was the sole participant, other than the accused, in the transaction charged. The informer was the only witness in a position to amplify or contradict the testimony of government witnesses. Moreover, a government witness testified that Doe denied knowing petitioner or ever having seen him before. We conclude that, under these circumstances, the trial court committed prejudicial error in permitting the Government to withhold the identity of its undercover employee in the face of repeated demands by the accused for his disclosure." [5]

What distinguishes Roviaro from the Soto-De Leon appeal is the informer's participation and perpetration in the proscribed behavior with Roviaro, implemented by conversations between the two actors during the episode. Soto and De Leon, on the other had, were on trial with Olivo who not only participated but who testified about the transaction involving Soto and De Leon. Just how any information concerning an informer (if there was one) would aid the defense of Soto and De Leon is unexplained in this record save for some unconnected utterances of Olivo's counsel regarding entrapment.

While testifying as a government witness, about his reports filed with the Bureau of Narcotics, Singer stated that they did not all concern Olivo, De Leon and Soto. From the unduly extended colloquy concerning the report, it is clear that there was a 21-page report from which the government excised certain portions leaving scattered fragments [6] relating to Singer's testimony, and these were handed the attorney representing Olivo. Counsel for appellants refused to look at the "confetti" and later when agent Cloonan was on the witness stand the U. S. Attorney said: "I have here, your Honor, all portions of this report which are pertinent to this witness' testimony, and I hereby tender them to counsel," appellant's attorney refused that tender.

 We believe it is the sounder view that nothing said in Jencks authorizes rummaging through government reports by defendants hunting for exculpatory scraps. Gordon v. United States, 1953, 344 U.S. 414, 419, 73 S.Ct. 369, 97 L.Ed. 447. The total report on activities of all defendants named in the six counts might make the report somewhat relevant but those portions of it touching defendants other than those then on trial would be irrelevant since neither Singer nor Cloonan, or any other government agent, testified about anything beyond [7] matters concerning Olivo, De Leon and Soto. So much of the reports relating to the testimony given by Singer and Cloon-

---

5. Cf. People v. Mack, 1957, 12 Ill.2d 151, 145 N.E.2d 609.

6. Counsel for De Leon and Soto stated his position in various ways, among which were:

"I want to see the whole report or no part of it * * * I see the whole report or I see nothing * * * I am not going into this file piecemeal, because the Jencks case say I don't have to, and I am not going to do it. * * * *"

"On behalf of the defendant(s) Soto and De Leon, in the event that between now and ten o'clock tomorrow morning the United States Attorney tenders me less than his full report on the file, under the authority of the United States v. Jencks, I shall refuse on behalf of my defendants to look at any portion of that file, and shall rest my case at this pos-

ture, if the Court will allow me to. * * * *"

"But I don't want to go up to the Court of Appeals and come down and try the case. I am entitled to try the case at this posture, and so I am renewing my motion which I have heretofore made with Mr. Devitt (Attorney for Olivo), that I be allowed to see that file."

7. "By Mr. Gannon: (Attorney for Soto and De Leon)

"Q. Mr. Singer, [Treasury Enforcement Agent, Bureau of Narcotics] you didn't mean for the jury to get the impression, did you, on this transaction involving March 18th that you have been discussing, that either of the two men that I represent were those unnamed names that you used? I mean those weren't the defendants you were talking

an were produced and we think that is all Jencks required.

▉ When Olivo voluntarily took the witness stand he verified some critical portions of the evidence given by the government agents. Yet it was within the trial judge's discretion to order all three defendants to be tried together. Stilson v. United States, 1919, 250 U.S. 583, 40 S.Ct. 28, 63 L.Ed. 1154. See Rules 12(g) (2) and 14, Federal Rules Criminal Procedure, 18 U.S.C. Abuse of sound judicial discretion on that point is unsupported by this record. United States v. Kramer, 7 Cir., 1956, 236 F.2d 656. Soto and De Leon in our judgment, had a fair trial. Dunaway v. United States, 1953, 92 U.S.App.D.C. 299, 205 F.2d 23.

Defendant's attack on the presumption [8] laid down by Congress in 21 U.S.C.A. § 176a was recently answered in Caudillo v. United States, 9 Cir., 253 F.2d 513 and we are in accord. See also Garcia v. United States, 10 Cir., 1957, 250 F.2d 930.

The prosecutor's remark, during an ill-advised exchange among the attorneys, which counsel for the defense claims ran afoul of 18 U.S.C. § 4244 because the finding of mental competency was indirectly brought to the possible notice of the jury is, at best, harmless error. Federal Rules Criminal Procedure, Rule 52 (a), 18 U.S.C.

Though we considered all points urged on behalf of these appellants those left unmentioned in this opinion required no reported discussion.

Judgment affirmed.

---

about, were they? A. If you are referring to the defendants De Leon and Soto, they had no part whatsoever in the March 18th transaction. They were not involved at all, Mr. Gannon, and if I gave the jury that impression, I did not do it purposely.

"Q. No, I am sure that you didn't, but I am also sure they didn't realize until this point that maybe there are other names that are defendants that are not present in the courtroom.

"Now as to the transfer or the alleged transfer of heroin in a tavern some time in January, Mr. Singer, you told us that—was it Muldoon?—You had another agent present there at that time. What was his name?

"Q. And you indicated, I believe, that there were other people present, but that they were not descript as far as

you were concerned, at the time of the pass? A. Yes, they were just patrons of the tavern.

"Q. So neither one of my two people were present there that day, were they? A. They were not involved in that transaction of February 7th.

"Q. So that you have been discussing three transactions involving contraband narcotics, and you now tell me, don't you, that Mr. De Leon and Mr. Soto are involved only in the marihuana transaction? A. They are involved only in the marihuana transaction of April 22nd."

**8.** For some legislative history of the Narcotics Control Act of 1956 see the Congressional Reports reprinted in 2 U.S. Code Cong. & Admn.News, pp. 3274-3322 (1956).