The UNITED STATES, Appellee,

v.

Harry C. BASS, Jr., Appellant.

The UNITED STATES, Appellee,

v.

SELB MANUFACTURING CO., Appellant.

Nos. 71–1733, 71–1734.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 11, 1972.

Decided Jan. 11, 1973.

Rehearing and Rehearing En Banc Denied Feb. 21, 1973.

Robert V. Light, Little Rock, Ark., for appellants.

Sidney H. McCollum, Asst. U. S. Atty., Little Rock, Ark., for appellee.

Before BRIGHT and STEPHENSON, Circuit Judges, and TALBOT SMITH, District Judge.*

STEPHENSON, Circuit Judge.

This appeal from a jury conviction charges trial court error in (1) denying discovery of documents and other evidence; (2) overruling a motion to dismiss the substantive charge because of failure to state a violation of Title 18 U.S.C. § 1001; (3) overruling the motion for judgment of acquittal on the same Count because of insufficiency of the evidence; (4) admitting certain evidence; (5) denying a motion for mistrial based on the alleged misconduct of the prosecuting attorney during closing arguments; and (6) assuming advocacy in the charge to the jury. We discuss the alleged errors seriatum. We affirm the conviction of both defendants.

Count I charged the defendant Harry C. Bass, Jr., and his solely owned corporation, defendant Selb Manufacturing Company (sub-contractor) and six other individual defendants,[1] with conspiring to defraud the United States by fraudulent statements and representations for the purpose of passing off on General Dynamics (general contractor), and ultimately the Air Force, unacceptable component parts for the F–111 aircraft as acceptable parts in violation of Title 18 U.S.C. § 371. Selb held a sub-contract with General Dynamics to manufacture pursuant to purchase orders certain component parts. Count XVI charged Bass and three other individual defendants with making false and fraudulent representations to the Air Force by fraudulent misapplication of serial numbers on aircraft parts and falsely representing that the aircraft parts met required specifications when they knew the parts were unacceptable.

In the fall of 1966, Selb and its affiliates, all owned by Bass, obtained a subcontract with General Dynamics to manufacture pursuant to purchase orders certain airplane parts to be included in the F–111 aircraft which General Dynamics was to build for the United States Air Force. Several purchase orders bearing dates between October 1966 and March 1967, and amendments thereto, were issued and executed. By the fall of 1967 Selb was behind in its delivery of parts and was experiencing difficulty in machining parts to blue print tolerances. The Government contends that it was at this time that there began a scheme and plan to defraud General Dynamics and ultimately the Air Force by sending them parts which were deficient and did not meet specifications without informing them of such deficiencies and in fact falsely representing that the parts were good and acceptable. The indictment in substance charged that the named defendants and other co-conspirators conspired to defraud the Government (1) by sending in deficient parts without indicating the parts were defective on Suppliers Inspection Rejection Reports (SIRs) as required by the

---

* Eastern district of Michigan, sitting by designation.

1. Prior to the instant trial, defendant Townley, a former employee of General Dynamics, was tried and acquitted on similar counts. Defendants Hunn and Davis, former employees of Selb, plead nolo contendere to certain counts of the same indictment. At the commencement of the instant case the Government dismissed Counts II through XV as to Bass. Bass was tried and convicted on Counts I and XVI, Selb on Count I. Bass was sentenced to 4 years imprisonment on each Count (to run concurrently) and fined $20,000; Selb was fined $5,000. In addition to the 7 named defendant-conspirators, there were 4 non-defendant conspirators listed in the indictment.

contract; (2) by removing serial numbers from defective parts and replacing them with serial numbers of good or acceptable parts; and (3) that in furtherance of the scheme officers and employees of Selb gave to employees of General Dynamics certain gratuities for the purpose of influencing and inducing favorable action as to the acceptance or rejection of parts. The trial extended over a two-week period. Some 28 witnesses testified and over 100 exhibits were received in evidence.

### Discovery

■ *Grand Jury Testimony.* Timely motions were filed in behalf of both defendants pursuant to Rules 6(e) and 16, Fed.R.Crim.Proc. for permission to inspect and copy the testimony of all witnesses who appeared before the grand jury, and, in the alternative, such permission with respect to the testimony of the officials and employees of General Dynamics, such testimony of Selb's officers and employees and such testimony of the witnesses the Government intended to call at trial. The Government resisted upon the grounds that no particularized need was shown, and further indicated it would (and it did) furnish copies of transcripts of the testimony of each witness it called to testify at the trial. The trial court denied defendants' motions upon the ground there was no showing of a substantial or particularized need for the testimony requested, with the reservation that if during the course of the trial a particularized need developed, upon renewed motion, the court would in all probability grant the motion.[2]

We are satisfied that the trial court's ruling was correct. Dennis v. United States, 384 U.S. 855, 868–875, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966). It was in accord with the rule well established in this Circuit. National Dairy Products

Corp. v. United States, 384 F.2d 457 (CA8 1967); United States v. Cole, 449 F.2d 194, 198 (CA8 1971); United States v. Harflinger, 436 F.2d 928, 935 (CA8 1970).

■ *Pretrial Conferences.* Defendants complain because they were excluded from pretrial conferences conducted by the Court in connection with the separate trials of other defendants. This complaint is so devoid of merit that it requires little comment. Initially a pretrial conference was held by the trial judge on the numerous motions filed by all the separate defendants, i. e., to dismiss, for severance, and general discovery. The trial judge then indicated that motions for separate trial would be granted and that additional pretrial conferences would be held with the individual defendants shortly before their respective trials. Conference was being conducted for the purpose of arranging the mechanics of the separate trials of those concerned. There was no need for including representatives of defendants whose trials were not affected. The instant defendants and their counsel were not excluded from any pretrial conference concerning their trial. No agreements or stipulations were entered into in their absence. See Rule 17.1 Fed.R. Crim.Proc. No prejudice has been shown. The pretrial conferences were conducted in conformance with the principles of sound judicial administration. Defendants complaints are completely devoid of merit.[3]

*Prime contract.* Defendants caused a subpoena duces tecum to be served on a representative of General Dynamics to produce the prime contract between the Air Force and General Dynamics. The Government moved to quash upon the grounds that classified portions of the prime contract were irrelevant to any issue in the case. The Government agreed to make available and did make

---

2. The trial court also noted that much of the testimony had become public at the previous Townley trial (n. 1).

3. The trial court did indicate that transcripts of those conferences held in connection with the trial of other defendants if reported could be examined upon request.

available all portions of the prime contract regardless of relevancy, except for certain specifications for the manufacture and performance of component parts of the aircraft which were classified as "secret" or "confidential" because they involved military secrets, and which, the Government also claimed, were in no way connected to the parts involved in the case on trial. The Government offered the testimony of the senior engineer for the Air Force at General Dynamics to establish that the documents in question were not relevant to any issues involved in the trial. The Government also offered evidence that Selb and its affiliates did not have security clearances and therefore could not have worked on classified portions of the contract.

■ The trial judge in granting the Government's motion to quash noted that the same issue had been raised in a pre-trial proceeding in connection with the trial of two other defendants named in the same indictment and that the judge had examined the classified portions of the contract in camera and did not find anything exculpatory or otherwise connected with the Selb work or relevant to the issues on trial. Defendants contend the information in question should have been disclosed, United States v. Andolscheck, 142 F.2d 503 (CA2 1944), and that the in camera inspection by the Court was inadequate to protect their right to determine if the evidence was relevant and material to the issues in dispute.[4] Jencks v. United States, 353 U.S. 657, 668–672, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957); Alderman v. United States, 394 U.S. 165, 181–182, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). However, we are satisfied from a review of the evidence that the possible evidentiary value of these documents was clearly negligible and the trial court did not abuse its discretion in quashing the subpoena. See United States v. Schneiderman, 106 F.Supp. 731, 735–739 (S.D. Cal.1952). The added precaution taken

by the trial court in making an in camera inspection of the documents lends added assurance that the motion to quash was proper. Taglianetti v. United States, 394 U.S. 316, 89 S.Ct. 1099, 22 L.Ed.2d 302 (1969); see also, Palermo v. United States, 360 U.S. 343, 354, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959); Boeing Airplane Co. v. Coggeshall, 108 U.S.App.D.C. 106, 280 F.2d 654, 662 (1960).

■ *Kersey Report.* Defendants complain that the trial court erred in refusing to require the Government to produce an Air Force investigation report concerning quality control at General Dynamics Ft. Worth plant. It came to be called the Kersey Report. The Government objected upon the grounds that the material contained therein was immaterial to any issue in the case; that it was a separate investigation of other matters; that there was no mention in the report of Selb nor any mention of unauthorized welding or false documents; that it did contain statements important only to inner Air Force Planning and actions. The report was submitted to the Court for an in camera inspection with the request by the Government that if the Court determined that the report should be made available, certain matter be deleted. The trial court examined the report and determined that it need not be produced. We have examined the report and are satisfied the Court properly ruled it need not be turned over to the defendants.

■ *General Dynamics Investigation Report.* Prior to trial defendants also caused a subpoena to be issued requiring General Dynamics to produce its industrial security department's investigation report. The trial court granted General Dynamics' motion to quash upon the grounds that it was the work product of General Dynamics prepared for other purposes; that it contained opinions of the investigator; that it was privileged and should not be produced unless clearly shown to be relevant to is-

4. The prime contract consisted of numerous documents which filled several file cases.

sues before the Court; that no good cause was shown for production of the document. This document was likewise sealed and preserved for our examination. We have examined the three volume report and are satisfied the trial court's ruling was correct.

In summarizing our rejection of defendants' complaints that their efforts to obtain production of documents and discovery of other evidence was unduly restricted, we observe that a vast amount of information was furnished to them. This includes (1) all records of Selb supplied to the grand jury; (2) a flow sheet showing a history of each part manufactured by Selb; (3) a report prepared by General Dynamics entitled "Chronology of Management Decisions, Re: Selb Matter"; (4) a list of the serial numbers of the parts about which the Government planned to present evidence; (5) a list of serial numbers that were changed; (6) a copy of an Air Force report which was the primary and official investigation by the Air Force into the fraud involving Selb; (7) at pretrial defendants' attorney was shown every exhibit which the Government intended to introduce at trial; (8) pretrial disclosure made of all witnesses to be called by the Government in their case in chief; (9) names of all witnesses appearing before the grand jury; and (10) all statements of each witness called by the Government whether given to the FBI, General Dynamics, or before the grand jury. We are abundantly satisfied that the experienced and able trial judge exercised due care to insure that the defendants were afforded maximum but reasonable discovery. Defendants' complaints to the contrary are devoid of merit.

### The substantive charge

Defendant Bass made a timely motion to dismiss Count XVI upon the grounds that the facts alleged therein failed to constitute a violation of Title 18 U.S.C. § 1001. He claims that the disputed Count charges fraudulent misapplication of serial numbers on parts manufactured by Selb for General Dynamics; and it may fairly be inferred from the indictment that there was no direct relationship between the agency of the United States involved (the Air Force) and the defendants; that the indictment does not charge that the defendants tendered any parts with altered serial numbers to the Air Force. Defendants cite, Lowe v. United States, 141 F.2d 1005 (CA5 1944); Terry v. United States, 131 F.2d 40 (CA8 1942).

■ The indictment specifically charges "in a matter within the jurisdiction of the United States Air Force" the defendants did make false and fraudulent statements and did alter and change serial numbers of various parts manufactured by Selb. It is not essential that it be charged or shown that the fraudulent representations were directly presented to an agency of the United States. Ebeling v. United States, 248 F.2d 429 (CA8 1957), cert. denied sub nom., Emerling v. United States, 355 U.S. 907, 78 S.Ct. 334, 2 L.Ed.2d 261 (1957); United States v. Waters, 457 F.2d 805 (CA3 1972). It is essential that the matter be within the jurisdiction of an agency or department of the United States. Friedman v. United States, 374 F.2d 363 (CA8 1967). See also, Bryson v. United States, 396 U.S. 64, 70–71, 90 S.Ct. 355, 24 L.Ed.2d 264 (1969). We are satisfied Count XVI clearly states a violation of Title 18 U.S.C. § 1001.

■ Bass claims that the trial court erred in denying his motions for judgment of acquittal on Count XVI made at the close of the Government's case, and again at the conclusion of all the evidence grounded upon insufficiency of the evidence. His chief complaint is that the sole testimony suggesting Bass' knowledge and participation in the changing and misapplication of serial numbers on parts was vague and confusing testimony by co-conspirators and co-defendant Kenneth Hunn,[5] then vice-

5. At the time of this trial Hunn had plead nolo contendere to certain counts of the indictment but had not yet been sentenced.

president of Selb. We fail to find Hunn's testimony vague and confusing. For instance, the record of Hunn's testimony discloses that in April 1969 on one occasion Hunn told Bass "* * * that we were all out of good parts that we could send to General Dynamics, and we had quite a few parts in the plant that were undercut * * *. And then Bass told me to weld the parts up and don't get caught." The weight and credibility of the testimony was for the jury. There was ample evidence indicating Bass took an active part in operating the business and knew about and participated in the fraud on the Government. We, of course, in determining the sufficiency of the evidence take that view of the evidence which is most favorable to the prevailing party and accord the Government in this case the inferences reasonably to be drawn from the facts shown. United States v. Liggins, 451 F.2d 577 (CA8 1971). The record adequately supports the conviction on Count XVI.

*Evidentiary Rulings*

We find no error in the trial court's admission of business records of Selb and General Dynamics. They were properly admissible under the Business Records Act, 28 U.S.C. § 1732. In some instances the foundation for the admission of records came through the testimony of several witnesses. Lack of personal knowledge concerning certain entries shown in some instances goes to their weight and not their admissibility.

Defendants contend that the Court erred in permitting the Government to offer evidence to establish the commission of overt act No. 12 which charged: "12) On or about July 24, 1968, defendant Harry C. Bass, Jr., paid a note on a 1968 Ford automobile for James L. Townley, in the amount of $2,150.00." Defendants urge that since co-defendant Townley was acquitted on the conspiracy charge in an earlier trial, evidence of that overt act should not have been admitted or the overt act submitted to the jury in their trial. They cite Herman v. United States, 289 F.2d 362 (CA5 1961), cert. den. 368 U.S. 897, 82 S.Ct. 174, 7 L.Ed.2d 93; Yawn v. United States, 244 F.2d 235 (CA5 1957). Alternatively, defendants argue that the jury should have been cautioned that the evidence was admissible only on the question of the existence of the conspiracy, but that the act itself could not satisfy the requirements to complete the crime of conspiracy.

The difficulty with defendants' contention is that Bass, not Townley, is charged with committing the overt act. Townley's acquittal on the conspiracy count, which includes besides Bass and Selb six additional co-defendant conspirators, does not absolve Bass, i. e., the discussion supra, regarding Count XVI illustrates there is strong evidence that Bass conspired with defendant Hunn. See Cross v. United States, 392 F.2d 360, 362 (CA8 1968); United States v. Fabric Garment Co., 262 F.2d 631 (CA2 1958); United States v. Pugliese, 153 F.2d 497 (CA2 1945). Neither does it prevent the Government from showing Bass committed the overt act in question. The overt act need not be criminal in nature. It need not involve more than one of the conspirators. Bergen v. United States, 145 F.2d 181, 187–188 (CA8 1944).

Defendants contend the Court erred in admitting testimony regarding a telephone conversation between co-defendants Townley and Davis about the automobile transaction just referred to. They urge that Townley's prior acquittal prevents his statements from being received, since they were not the statements of a co-conspirator, and they were not made in furtherance of the conspiracy. Townley's acquittal in a prior trial does not prevent the jury from considering testimony regarding his relationship with other defendants and co-conspirators. Burt v. United States, 139 F.2d 73, 76 (CA5 1944); Kamanosuke Yuge v. United States, 127 F.2d 683, 689 (CA9 1942).

At the time this testimony was received, the trial court properly admonished the jury that it could not consider the statements offered unless it was convinced from independent evidence beyond a reasonable doubt that a conspiracy, in fact, existed and that the defendants on trial were a part of the conspiracy, and that the statements made were in furtherance of the conspiracy. United States v. Reed, 446 F.2d 1226, 1231 (CA8 1971). There was evidence from which the jury could so find.

We find no merit in defendants' contention that a mistrial should have been granted because of prejudicial argument on the part of the United States Attorney. Neither do we find any merit whatsoever in the allegation that the trial court unfairly commented on the evidence in its instructions to the jury.

We are satisfied that defendants have received a fair trial free of prejudicial error.

Affirmed.