UNITED STATES of America, Appellee,

v.

Robert BLACKSHIRE, Appellant.

UNITED STATES of America, Appellee,

v.

Nathaniel BARNES, Appellant.

Nos. 75–1250 and 75–1251.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 6, 1976.

Decided March 31, 1976.

Certiorari Denied Oct. 4, 1976. See 97 S.Ct. 113.

Patricia W. Weinberg, Arlington, Va. [court-appointed], for Robert Blackshire.

Joseph J. Askin, Baltimore, Md. [court-appointed], for Nathaniel Barnes.

Robert A. Rohrbaugh, Asst. U. S. Atty., Silver Springs, Md. (Jervis S. Finney, U. S. Atty., for the District of Maryland, Baltimore, Md., on brief), for appellee.

Before BRYAN, Senior Circuit Judge, and WINTER and BUTZNER, Circuit Judges.

BUTZNER, Circuit Judge:

Robert Blackshire and Nathaniel Barnes, indicted with others for distributing and conspiring to distribute heroin, appeal their convictions on several grounds.* We re-

---

* Blackshire and Barnes were indicted for violating 21 U.S.C. §§ 841(a)(1) and 846, and 18 U.S.C. § 2. The case was tried before the effective date of the Federal Rules of Evidence.

verse Blackshire's case and remand it for a new trial. We affirm the judgment convicting Barnes.

We find no error in the denial of Blackshire's motion for a judgment of acquittal. The government's proof indicated that he was little more than a hanger-on who from time to time appeared at the periphery of the conspiracy. For example, he was present when other defendants cut and bagged heroin, but he did not join in this activity. Although he used heroin, the government offered no proof that he was a pusher. The most damaging evidence of his participation in the conspiracy was his presence at the Baltimore airport under circumstances from which the jury could infer that he had accompanied a ringleader who was bringing heroin from California. He did not take a direct part in the sale of the heroin that was the subject of the substantive count. The jury, however, could have inferred the he knowingly aided in the transaction. Viewed in the light most favorable to the prosecution, the evidence, though circumstantial, tends to show Blackshire's guilt beyond a reasonable doubt. We therefore find no error in the district court's denial of his motion for a judgment of acquittal. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Bell v. United States,* 185 F.2d 302, 310 (4th Cir. 1950).

Blackshire's principal assignment of error is the admission of a codefendant's statement to a police officer after her arrest. In the codefendant's Baltimore apartment, the arresting officer observed a suitcase with a baggage tag showing it had been checked at a California airport. Later, at the police station the codefendant said Blackshire and another man had borrowed the bag. Under the circumstances of the case, the evidence was undoubtedly admissible against the declarant, but it should not have been admitted against Blackshire over his objection.

The government, citing *Nelson v. O'Neil,* 402 U.S. 622, 91 S.Ct. 1723, 29 L.Ed.2d 222 (1971), properly asserts that the admission of this testimony did not violate the confrontation clause of the sixth amendment because the declarant was a witness. This, however, is not the end of the matter. A conspirator's statement, made after his arrest, is not admissible against his coconspirators because it is not made in furtherance of the conspiracy nor during its continuance. *Fiswick v. United States,* 329 U.S. 211, 67 S.Ct. 224, 91 L.Ed. 196 (1946); *Krulewitch v. United States,* 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949). In light of Blackshire's tenuous link to the conspiracy, the admission of his codefendant's post-arrest statement was not harmless error. On the contrary, the statement was an important part of the government's case, and its erroneous admission requires reversal of Blackshire's convictions of both the conspiracy and substantive counts.

Since the case must be retried, we will briefly consider other assignments of error that Blackshire presses. He protests the admission of a taped telephone conversation between a codefendant and a police informant in which his name was mentioned and his credibility impugned. For the purpose of considering the admissibility of this evidence, the proof was sufficient to show that both Blackshire and the declarant were participants in the conspiracy, *see United States v. Nixon,* 418 U.S. 683, 701 n.14, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *United States v. Jones,* 542 F.2d 186, 203 (4th Cir. 1976), and the subsequent acquittal of the declarant does not render the evidence inadmissible. *United States v. Bass,* 472 F.2d 207, 213 (8th Cir. 1973). The mere lapse of several months between the last overt act and the conversation did not in itself establish that the statements were made after the conspiracy ended, for a conspiracy is presumed to continue until its termination is shown. *United States v. Cirillo,* 468 F.2d 1233, 1239 (2d Cir. 1972). Finally, though the conversations were enigmatic, other testimony justified the inference that the declarant was talking about

**572**

heroin and furnishing information in furtherance of the conspiracy. We therefore find no error in the admission of the tapes and transcripts of these conversations. *See* Federal Rule of Evidence 801(d)(2)(E).

On direct examination, Blackshire narrowly confined his testimony to the charges of the indictment. On cross-examination the court allowed the government to elicit an admission that he had once used mescaline. He denied, however, that when he was arrested agents found some mescaline tablets in his shoe. The government then introduced rebuttal evidence that an agent had indeed found a package of tablets in Blackshire's shoe and that Blackshire had identified them as mescaline. Subsequent analysis showed the tablets were, in fact, LSD, which the government concedes is so closely related to mescaline that Blackshire probably did not know the difference.

■ The district judge cautioned the jury that this evidence was not any indication of Blackshire's guilt, but he admitted it for the purpose of testing Blackshire's credibility. This, we believe, was error that should not be repeated on retrial. Blackshire's testimony that he had used mescaline was not useful to impugn his credibility. Rather, it served merely to prejudice the jury. *Cf. United States v. Pennix,* 313 F.2d 524, 528 (4th Cir. 1963). The rebuttal testimony violated the rule, long recognized in this circuit, that extraneous evidence of misconduct cannot be introduced to impeach a witness. *See Pullman Co. v. Hall,* 55 F.2d 139, 141 (4th Cir. 1932). *See* Federal Rule of Evidence 608(b); 3 Weinstein and Berger, Commentary on Rules of Evidence ¶ 608[05].

■ Barnes' single assignment of error, in which Blackshire joined, concerns the denial of a motion for a severance and mistrial. The motion was made after counsel for a codefendant said in his opening statement that the codefendant denied participating in the conspiracy but admitted her guilt on the substantive count. The lawyer's opening statement accurately foretold what his client's position would be. In her subsequent testimony, the codefendant

admitted her role in the sale of heroin as charged in the substantive count. She also implicated Barnes. His counsel, as well as Blackshire's, had an opportunity to cross-examine her, so there was no violation of the sixth amendment's confrontation clause. A severance was not required merely because her counsel's opening statement indicated that her testimony would support certain aspects of the prosecution. *Cf. United States v. Soto,* 256 F.2d 729 (7th Cir. 1958).

No. 75–1250—Reversed and Remanded.

No. 75–1251—Affirmed.

ALBERT V. BRYAN, Senior Circuit Judge (dissenting):

I would affirm in both cases. The guilt of the appellant Blackshire is so clear and the evidence ruling on which reversal of his conviction is premised is so minimal an error, if any, that in my judgment remand of that case is no more than an academic exercise.