**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                              No. 96-4457

BILLY JAMES SIMS, a/k/a Rico,
Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Rock Hill.
Dennis W. Shedd, District Judge.
(CR-95-1067)

Argued: May 8, 1998

Decided: August 27, 1998

Before WIDENER and HAMILTON, Circuit Judges, and
FRIEDMAN, United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** William Elvin Hopkins, Jr., MCCUTCHEN, BLANTON,
RHODES & JOHNSON, Columbia, South Carolina, for Appellant.
Marvin Jennings Caughman, Assistant United States Attorney,
Columbia, South Carolina, for Appellee. **ON BRIEF:** J. Rene Josey,
United States Attorney, Columbia, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Billy James Sims appeals his conviction and sentence resulting from a five count indictment charging conspiracy to possess with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1), three counts of possession with intent to distribute and distribution of crack cocaine, in violation of 21 U.S.C. § 846, and possession and attempt to possess with intent to distribute crack cocaine, in violation of 21 U.S.C. § 846. Sims raises multiple issues challenging both his conviction and sentence. For the reasons that follow, we affirm.

I.

Evidence at trial established that Sims had been involved with drug trafficking in the Rock Hill, South Carolina area since the early 1990's, first as a runner and minor dealer, then as a major supplier of other dealers. Sims eventually joined efforts with other dealers, including several of the witnesses who testified on behalf of the government at trial. Each of these witnesses testified that he knew of and/or accompanied Sims on trips to New York to obtain cocaine. Specific testimony was presented concerning trips which occurred during December 1994, and the spring and summer of 1995. In addition, the evidence showed that Sims employed a juvenile in relation to the drug trafficking, and that Sims was in possession of a firearm on at least one occasion while transporting drugs from New York to South Carolina.

Count V of the indictment stemmed from a traffic stop on September 4, 1995, south bound on the New Jersey Turnpike. Sims and his companion, Issac Kinard Davis, were pulled over by a New Jersey State Trooper for following another vehicle too closely. Sims was unable to produce a driver's license, but did provide the vehicle regis-

2

tration. The vehicle was registered to Davis' brother. Sims orally provided his name and license number to the New Jersey State Trooper, Trooper Colon. Trooper Colon testified that he requested permission to search the vehicle after receiving conflicting stories from its occupants about their trip to New York. At that time, Sims completed a consent to search form, and confessed that he had previously provided a false name and driver's license number. A search of the vehicle revealed a black vinyl bag with what felt like "rock like" substances inside. When Trooper Colon opened the bag he saw a"white chunky substance" that resembled crack cocaine. Sims was placed under arrest and advised of his Miranda rights, which he acknowledged in writing. The troopers transported Sims to the Newark State Police Barracks where he was again advised of his Miranda rights. Sims waived his rights and made a statement. Sims told the questioning officer, Trooper Iannone, that he purchased 351 grams of cocaine in New York "to sell in Rock Hill." Tests confirmed that the substance seized was in fact crack cocaine.

II.

Sims raises the following challenges to his convictions and sentence.

A.

Sims first assignment of error pertains to the propriety of venue in the District of South Carolina for Count V of the indictment. Count V alleges that on or about September 4, 1995, in the District of South Carolina and elsewhere, Sims did knowingly and intentionally possess with intent to distribute and did attempt to possess with intent to distribute crack cocaine, in violation of 21 U.S.C.§ 841(a)(1).

The Constitution guarantees a defendant the right to be tried in the state where a crime was committed. U.S. Const. art. III, § 2, cl. 3. See also Fed. R. Crim. P. 18. This right serves to safeguard against hardship or prejudice which may result from prosecution in a distant location. See Platt v. Minnesota Mining & Manufacturing Co., 376 U.S. 240, 245 (1964). Count V arose from a traffic stop on the New Jersey Turnpike during which drugs were found in the car Sims was driving. Sims argues that he never possessed the drugs in South Carolina, and

3

that venue was therefore improper as to Count V in the District of South Carolina.

It is widely accepted that the privilege of venue may be waived through a defendant's failure to make a timely objection. See, e.g., United States v. Dabb, 134 F.3d 1071, 1078 (11th Cir. 1998); United States v. Turley, 891 F.2d 57, 61 (3rd Cir. 1989); United States v. Winship, 724 F.2d 1116, 1124 (5th Cir. 1984). In this Circuit, when a defect in venue is apparent on the face of the indictment, any objection must be raised prior to trial to be considered timely. United States v. Melia, 741 F.2d 70 (4th Cir. 1984), cert. denied, 471 U.S. 1135 (1985). When an indictment alleges proper venue, an objection is timely if made at the close of the government's case or at the close of the evidence when the government fails to prove venue as alleged. Id. at 71. Sims failed to raise any objection to venue in the district court, and thereby waived venue. He cannot now seek appellate review of the propriety of venue in the District of South Carolina for Count V.

B.

Sims next contends the district court erred in denying his Batson challenge. Sims, an African-American, was tried by an all white jury. Although Sims does not have a right to a jury composed in whole or in part by African-Americans, he does have the right "to be tried by a jury whose members are selected pursuant to nondiscriminatory criteria." Batson v. Kentucky, 476 U.S. 79, 85-86 (1986). See also J.E.B. v. Alabama, 511 U.S. 127 (1994). This right, however, must be exercised in a timely manner, and failure to raise a Batson challenge prior to the venire being excused constitutes a waiver of the challenge. Morning v. Zapata Protein, 128 F.3d 213, 216 (4th Cir. 1997).

Sims objection to the makeup of the jury, was not raised until after the dismissal of the venire. The district court found Sims waived his Batson challenge because it was untimely, noting that the parties were afforded ample opportunity for Batson challenges prior to the dismissal of the venire. The record clearly supports the district court's finding, and we likewise find Sims waived any Batson challenge.

Nonetheless, the district court briefly addressed the merits of the Batson challenge, finding that the government offered race-neutral

4

reasons for its peremptory challenges. We give great deference to the district court's finding, and review it only for clear error. Jones v. Plaster, 57 F.3d 417, 421 (4th Cir. 1995); see also Hernandez v. New York, 500 U.S. 352, 369 (1991) (plurality opinion) (clearly erroneous standard of review applies to trial court's findings in a Batson challenge). The record does not support Sims' contention that the district court was clearly erroneous in its denial of his Batson challenge.

C.

Turning to Sims' claim that the district court erred in allowing the statements of his alleged coconspirators into evidence, we find the claim to be illogical and completely without merit. Sims did not attempt to exclude hearsay statements of alleged coconspirators, but rather the actual trial testimony of the coconspirators. The witnesses in question made statements to law enforcement officers after Sims was taken into custody and the conspiracy had ceased to exist. According to Sims, the statements would be hearsay since they were not made in furtherance of the conspiracy. Sims argues that the trial testimony should be excluded as hearsay as well, because the content was consistent with the statements made to the law enforcement officials.

Sims attempts to analogize the instant matter to this Court's decision in United States v. Blackshire, 538 F.2d 569 (4th Cir. 1976), wherein the Court found that the statement of a coconspirator made after the defendant's arrest was inadmissible hearsay. In Blackshire, however, the government sought to admit the coconspirator's statement not through the direct testimony of the coconspirator, but through the police officer to whom the statement had been made. Id. The facts of this case are inapposite. The alleged coconspirators themselves testified during the trial. The government did not attempt to introduce the coconspirators' statements through others.

Sims incorrectly uses the term "hearsay" in an attempt to thwart any assistance his coconspirators might provide the government. According to Rule 801(c) of the Federal Rules of Evidence, "`Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter." The end result Sims seeks would serve only to misinter-

pret the purpose of Rule 801(c), and would prevent the trial testimony of any coconspirator who had spoken with law enforcement officials. Direct testimony was before the district court, not hearsay. The testimony of the coconspirators was properly admitted into evidence.

D.

As his next assignment of error, Sims contends the trial court erred in denying his motion to suppress. Sims sought suppression of the drugs recovered in the New Jersey traffic stop, challenging his consent to the search of the vehicle. Voluntariness of consent is a question of fact to be determined from the totality of the circumstances, and the district court's finding will not be disturbed unless clearly erroneous. United States v. Wilson, 895 F.2d 168, 172 (4th Cir. 1990) (per curiam); United States v. Gordon, 895 F.2d 932, 938 (4th Cir. 1990). See also United States v. Mendenhall, 446 U.S. 544, 557 (1980). The evidence is viewed in the light most favorable to the prevailing party, herein, the government. United States v. Elie, 111 F.3d 1135 (4th Cir. 1997).

The court must examine the totality of the circumstances surrounding consent in its determination of whether consent was voluntary. Mendenhall, 446 U.S. at 557. Appropriate factors to consider include "the characteristics of the accused (such as age, maturity, education, intelligence, and experience) as well as the conditions under which the consent to search was given (such as the officer's conduct; the number of officers present; and the duration, location, and time of the encounter)." United States v. Lattimore, 87 F.3d 647, 650 (4th Cir. 1996). The government need not produce evidence that the defendant "knew of his right to refuse consent to prove that consent was voluntary." Id.

The record supports the finding that Sims voluntarily consented to the search of the car. Evidence introduced during the suppression hearing established that Sims was stopped for following another vehicle too closely, that he was unable to produce a driver's license, and that Sims and his passenger provided conflicting accounts of their trip to New York. In addition, the evidence established that Trooper Colon asked Sims to complete a consent to search form, which he did, consenting to the search of the car. While completing the form, Sims

6

informed the trooper that he had provided a false identity and was in fact driving on a suspended license.

Sims nonetheless argues that the trooper coerced him into consenting to the search. Although consent has been found invalid, and the resulting search unreasonable, where consent was granted only in "acquiescence to a claim of lawful authority," <u>Bumper v. North Carolina</u>, 391 U.S. 543, 548-49 (1968), the record herein does not support such a finding. Sims' allegation of coercion arises from a statement Trooper Colon made when Sims was unable to produce a driver's license. The Trooper, relying on state law, told Sims he would search for the license in the vehicle himself if Sims was unable to locate it. While we decline to address the propriety of that action if it were to have occurred, we find that the record does not support a conclusion that this was the sole basis for Sims' consent to the search. Instead, the statement was a single circumstance to be taken into account in the totality of the circumstances surrounding the consent.

The district court had the opportunity to carefully consider each of the factors outlined above, including Sims' characteristics and the conditions under which he gave consent. Moreover, the district court had the opportunity to observe the demeanor of the witnesses. <u>See Wilson</u>, 895 F.2d at 172 (Where findings of consent are based on oral testimony, "`the clearly erroneous standard is particularly strong since the [court] had the opportunity to observe the demeanor of the witnesses,'" quoting <u>United States v. Sutton</u>, 850 F.2d 1083, 1086 (5th Cir. 1988)). Nothing contained in the record persuades us that the district court's finding was clearly erroneous. Because Sims consent was voluntary and not coerced by the state trooper, the district court did not err in admitting the drugs.

E.

Sims next contends that the evidence was insufficient to support a conviction for conspiracy. We find that this claim is also without merit. The standard of review for a sufficiency of the evidence claim in a criminal case is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, <u>reh. denied</u>, 444 U.S. 890 (1979);

7

United States v. Giunta, 925 F.2d 758, 764 (4th Cir. 1991). The government is afforded all reasonable inferences which flow from the circumstantial and direct evidence brought before the district court. United States v. Burgos, 94 F.3d 849, 858 (4th Cir. 1996) (en banc), cert. denied, ___ U.S. ___, 117 S.Ct. 1087 (1997). In this case, the Court has no duty to weigh the evidence or review witness credibility. United States v. Burns, 990 F.2d 1426, 1439 (4th Cir. 1993). It is the jury's role to "resolve conflicts in testimony, weigh the evidence, and judge the credibility of witnesses." United States v. Manbeck, 744 F.2d 360, 392 (4th Cir. 1984).

Trial testimony included not only that of individuals who purchased drugs from the Sims, but also testimony from those who assisted him in transporting drugs, and in hiding both money from drug sales and the drugs themselves. This Court has determined that reversal should be confined to those cases in which the failure of proof is clear. United States v. Jones, 735 F.2d 785, 791 (4th Cir. 1984). Faced with this strict standard for evaluating the evidence for sufficiency, and given the evidence as construed in the light most favorable to the government, we find the evidence was sufficient for a reasonable jury to have found Sims guilty of conspiracy to distribute and possess with intent to distribute crack cocaine.

F.

Ineffective assistance of counsel claims are not normally considered on direct appeal, but fall instead to collateral appeals, wherein a defendant files a Section 2255 motion in district court. United States v. Grubb, 11 F.3d 426, 441 (4th Cir. 1993). See also United States v. Williams, 977 F.2d 866, 871 (4th Cir. 1992). For this Court to review a claim of ineffective assistance of counsel on direct appeal, the record must conclusively demonstrate an absence of effective assistance of counsel. United States v. Ford, 88 F.3d 1350, 1363 (4th Cir.), cert. denied, ___ U.S. ___, 117 S.Ct. 496 (1996). We do not reach the issue of whether Sims' counsel's assistance was effective, finding that the record does not conclusively demonstrate an absence of effective assistance. Sims is free to raise his claim of ineffective assistance on collateral review.

G.

As to Sims' claim that the trial court erroneously calculated the amount of drugs attributable to him for sentencing purposes, we find no error and affirm the trial court's determination. We review the trial court's factual determinations as to drug quantities for sentencing purposes for clear error. United States v. Fletcher , 74 F.3d 49, 55 (4th Cir.), cert. denied, ___ U.S. #6D6D 6D#, 117 S. Ct. 157 (1996). In calculating drug quantities attributable to a defendant, the district court may consider any relevant evidence before it, including hearsay testimony. United States v. Bowman, 926 F.2d 380, 381 (4th Cir. 1991).

The quantity of drugs attributable to a defendant in a conspiracy is that which is "reasonably foreseeable to each coconspirator within the scope of his agreement." United States v. Irvin, 2 F.3d 72, 78 (4th Cir. 1993). See also U.S. Sentencing Guidelines Manuel § 1B1.3 (a)(1)(B) (hereafter "U.S.S.G."). The government must establish the quantity attributable to a defendant by a preponderance of the evidence, and may do so through the introduction of relevant and reliable evidence. United States v. Jones, 31 F.3d 1304, 1316 (4th Cir. 1994); United States v. Gilliam, 987 F.2d 1009, 1013-14 (4th Cir. 1993).

The district court found an aggregate amount of 8.4 kilograms of cocaine base, or "crack" cocaine, attributable to Sims through his involvement in the conspiracy. The district court based this finding on the testimony of multiple witnesses, who actually testified to Sims' involvement with in excess of 13 kilograms of crack cocaine. After a lengthy hearing, the district court found only the lesser amount of 8.4 kilograms attributable to Sims. That amount was still substantially higher than the 1.5 kilograms which would have given Sims the highest base offense level provided for in the guidelines. See U.S.S.G. § 2D1.1(c). A review of the record reveals no clear error in the district court's finding.

H.

Finally, Sims argues that the trial court erred in enhancing the offense level two points for possession of weapons during the commission of a drug trafficking offense. See U.S.S.G. § 2D1.1(b)(1). This contention lacks merit as well. The trial court's decision to

9

enhance the offense level is reviewed for clear error. <u>United States v. Falesbork</u>, 5 F.3d 715, 719 (4th Cir. 1993).

For an enhancement under Section 2D1.1(b)(1) of the sentencing guidelines to be improper, it must be "clearly improbable that the weapon was connected with the offense." U.S.S.G.§ 2D1.1, commentary at n. 3; <u>see also United States v. Apple</u>, 962 F.2d 335 (4th Cir. 1992). Moreover, an enhancement is proper where the weapon or weapons in question were possessed by either the defendant or a coconspirator, provided that the coconspirator's conduct was reasonably foreseeable and in furtherance of jointly undertaken activity. <u>United States v. Nelson</u>, 6 F.3d 1049, 1054-57 (4th Cir. 1993).

The record clearly establishes the propriety of the guideline enhancement for possession of a firearm during a drug trafficking offense. A coconspirator testified that during one of the trips to New York to obtain cocaine, he and Sims stopped in Washington, D.C., placing their weapons in the trunk of the Lexus they were driving. They then left the Lexus in Washington, and drove to New York City in a mini-van to purchase cocaine. After obtaining six kilograms of cocaine, they returned to Washington and picked up the Lexus. Sims and his coconspirator then transported the drugs back to South Carolina in the Lexus, which still contained the weapons. We find no clear error in the district court's conclusion that firearms were possessed during the drug trafficking, and therefore affirm the district court's enhancement of the guidelines.

III.

For the reasons stated herein, we affirm the judgment of the district court.

<u>AFFIRMED</u>

10