481 F.2d 1204
 GENERAL DYNAMICS CORPORATION, Appellee,
v.
SELB MANUFACTURING COMPANY, a Division of Western, Inc., a
corporation, and Marie M. Bass, Administratrix of
the Estate of Harry C. Bass, Jr.,
Deceased,* Appellants.
 No. 72-1318.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 13, 1973.
Decided July 30, 1973.
Rehearing and Rehearing En Banc Denied Aug. 27, 1973.
 
 Bernard A. Barken, St. Louis, Mo., and Robert V. Light, Little Rock, Ark., for appellants.
 Thomas L. Croft, St. Louis, Mo., for appellee.
 Before MATTHES, Chief Judge, and ROSS and STEPHENSON, Circuit Judges.
 STEPHENSON, Circuit Judge.
 
 
 1
 This is an appeal by Selb Manufacturing Corp. and its sole owner, Harry C. Bass from an adverse verdict in favor of General Dynamics against both defendants, for $600,000.00 actual damages and $250,000 punitive damages. The lawsuit arose initially out of a contract between Selb and General Dynamics in connection with the production of the highly controversial F-111 military aircraft. The corresponding criminal appeal decided by this Court is reported at 472 F.2d 207.
 
 
 2
 General Dynamics held the prime government contract to design and manufacture the F-111 for the United States Air Force at its Fort Worth, Texas plant. During the fall of 1966, Selb Manufacturing obtained a sub-contract with General Dynamics under which Selb was to manufacture vital component parts for the aircraft pursuant to purchase orders. Six of the orders were issued between October, 1966 and March, 1967, calling for the manufacture by Selb of "longerons" and "capwing pivot supports." Under terms of the contract, Selb was to manufacture and inspect these parts in exact accordance with specifications and drawings.
 
 
 3
 Under normal operating conditions of the aircraft, the longerons would carry enormous quantities of stress. Certain restrictions were therefore placed upon longerons requiring welding since the welded area would be relatively weaker than its unwelded counterpart. Thus, where welding was required, the proposed weld would be submitted to the Material Review Board (M.R.B.) on a Supplier's Inspection Report (S.I.R.) form. The M.R.B. consisted of three members: a General Dynamics engineer, a member of the General Dynamics quality assurance department, and a member of Air Force Quality Assurance. Authorization to perform a weld required concurrence of all three M.R.B. members.
 
 
 4
 During June of 1968, Selb began welding without M.R.B. authorization. Warnings were subsequently issued by General Dynamics and ignored. On October 29, 1969, General Dynamics wired Selb terminating all six contracts for fault.
 
 
 5
 A discrepancy report was later issued on the allegedly defective Selb parts which indicated the following:
 
 
 6
 (1) Sixty one (61) 1891 longerons with defective welds;
 
 
 7
 (2) Eleven (11) 1750 longerons with defective welds;
 
 
 8
 (3) One carry through plate with a defective weld;
 
 
 9
 (4) Two carry through plates with dimensional discrepancies.
 
 
 10
 General Dynamics filed its complaint on November 14, 1969, and amended the same in April, 1970. It alleged fraud and breach of contract in its first two counts. In count three it sought to recover a penalty from Selb based upon the alleged giving of gratuities on its behalf to employees of General Dynamics. Pursuant to defendant's motion, the third count was dismissed on July 13, 1970. In its memorandum opinion, the trial court also held that Count I did not state a cause of action under Missouri Law. It stated that under Missouri law a tort action based upon a contractual relationship arises only where the duty allegedly breached is created by reason of the relationship between the parties regardless of the contract, i.e., landlord-tenant. The trial court reasoned, however, that since the State where the act occurred (Texas) permits such an action and has a strong interest in a suit arising from such an act, Count I would not be dismissed. General Dynamics' second amended complaint, again alleging fraud and breach of contract, was filed September 3, 1970.
 
 
 11
 In its answer Selb indicated, by way of affirmative defense, that General Dynamics waived the requirement that Selb report and obtain authorization for any corrective action to be taken on parts. Selb also counterclaimed seeking approximately $5,000,000.00 in damages for alleged breach of contract, and $6,000,000.00 for alleged defamation. Bass similarly raised the affirmative defense of waiver and counterclaimed for $6,000,000.00 for defamation.
 
 
 12
 On September 8, 1971, General Dynamics filed interrogatories directed at both defendants. On December 28, 1971, General Dynamics moved to compel defendants to answer. The motion was sustained on January 4, 1972, and defendants were ordered to answer within twenty (20) days.
 
 
 13
 On January 7, 1972, defendant Bass served and filed his response thereto in which he asserted his Fifth Amendment Constitutional privilege not to incriminate himself. On the same date, Selb filed its answers to the interrogatories. Subsequently, General Dynamics moved to compel defendant Bass to answer each interrogatory. It also moved to compel Selb to answer the interrogatories more completely and sufficiently, or to dismiss Selb's counterclaims and to strike its affirmative defenses. In conjunction with General Dynamics' motions, defendants moved for a protective order, continuance and/or stay pending the outcome of their criminal appeal since judgment had been entered against them on November 9, 1971.
 
 
 14
 On February 18, 1972, the trial court heard oral argument on the motions and reviewed supporting affidavits and briefs. By oral order issued the same day, defendants' motion was denied. The trial court further ordered defendants to answer each interrogatory within twenty (20) days from February 18, 1972, and that if this order had not been followed upon expiration of the twentyday period an order would be issued dismissing the counterclaims of each defendant with prejudice, and striking their respective affirmative defenses also with prejudice.
 
 
 15
 Defendant Selb filed its supplemental answers on March 8, 1972. The twenty-day period expired as to Bass, without answers having been filed. After having read Selb's answers, the trial court determined that the answers as supplemented failed to comply with its earlier order that full and complete answers be made to each interrogatory. The trial court therefore entered its order of March 13, 1972 dismissing defendants' counterclaims with prejudice, and striking with prejudice, defendants' affirmative defenses.
 
 
 16
 Defendants now appeal and raise the following questions for our consideration:
 
 
 17
 I. Whether the trial court erred as to defendant Selb in dismissing its counterclaim, striking its affirmative defenses and denying its motion for a protective order.
 
 
 18
 II. Whether the trial court denied Bass his right against compulsory self-incrimination when it ordered him to answer interrogatories or face dismissal of his counterclaim and have his affirmative defenses stricken, and further whether it erred by denying Bass' motion for a protective order.
 
 
 19
 III. Whether the trial court applied the proper substantive law to this cause.
 
 
 20
 IV. Whether Count I of General Dynamics complaint stated a claim upon which relief could be granted.
 
 
 21
 V. Whether the trial court properly ruled: That former employees of the corporate parties were equally available to the parties; that a motion picture proffered by General Dynamics which depicted certain characteristics of the F-111 was admissible; and that evidence of weld repairs made without prior written authority by other vendors was inadmissible.I.
 
 
 22
 DISMISSAL OF SELB'S COUNTERCLAIM AND STRIKING OF ITS
 
 AFFIRMATIVE DEFENSES
 
 23
 Fed.R.Civ.P. 33(a) provides that where interrogatories are directed at a corporation, the corporation must designate someone to answer on its behalf "such information as is available to the party." (emphasis supplied) United States v. Kordel, 397 U.S. 1, 8, 90 S.Ct. 763, 767, 25 L.Ed.2d 1 (1970); see, Wright & Miller, Federal Practice and Procedure: Civil Sec. 2018 at 143-44, and Sec. 2172 at 536. Only in extreme cases, where no corporate agent can answer the propounded interrogatories without being subject to a "real and appreciable risk" of self-incrimination, should a protective order, pursuant to Fed.R.Civ.P. 26(c), be issued. Accord, United States v. Kordel supra, 397 U.S. 1, 8-9, 90 S.Ct. 763, 767-768 (1970).[1]
 
 
 24
 Where no valid privilege is asserted and a party fails to obey an order to permit discovery. Fed.R.Civ.P. 37(b) (2) provides that "the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:"
 
 
 25
 ******
 
 
 26
 * * *
 
 
 27
 "(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party."
 
 
 28
 According to Selb, at the time of the closing of its plant during March, 1971, it had only five officers and employees. Of those, two, who were maintenance employees, were terminated in October, 1971. The three remaining persons, all officers, were: Harry C. Bass, Jr., President, Steven C. Fischer, a corporate officer, and Raymond N. Frey, Secretary. Since Bass and Fischer were involved in criminal litigation[2] arising from the events surrounding this civil cause, Frey was designated to respond to discovery procedures. We must decide, therefore, whether Frey provided "such information as [was] available to [Selb]." By Frey's own admission, he did not.
 
 
 29
 In Selb's supplemental answers to interrogatories, filed March 8, 1972, Frey stated repeatedly that he "has insufficient personal knowledge upon which he can base an answer and there are no other present employees or officers available to answer." (Emphasis supplied.) As agent of Selb, Frey was obligated to furnish all information available to the corporation, which responsibility was not delimited by his own personal knowledge of the situation. United States v. 3963 Bottles, more or less, etc., 265 F.2d 332, 336 (7th Cir. 1959); 4A Moore's Federal Practice p 33.26 at 33-146. More specifically, knowledge of officers and employees of Selb Manufacturing, relative to the subject matter of the instant cause, is imputed to the corporation itself. Acme Precision Products, Inc. v. American Alloys Corp., 422 F.2d 1395, 1398 (8th Cir. 1970). Thus Frey was duty bound to secure all information available to Selb. This would include information within the personal knowledge of former Selb employees, employed by Selb at the time this action commenced.[3] Additionally, it would include information possessed by its corporate counsel.[4] Selb failed to demonstrate that the corporation lacked information sufficient to answer the interrogatories.
 
 
 30
 The sanctions available to a trial judge under Fed.R.Civ.P. 37(b) are discretionary. We cannot reverse the trial court, therefore, unless that discretion has been abused. Wright & Miller, Federal Practice and Procedure: Civil Sec. 2284 at 765; 4A Moore's Federal Practice p 37.08 at 37-112-13. See also, R. Waterman, An Appellate Judge's Approach When Reviewing District Court Sanctions Imposed For the Purpose of Insuring Compliance with Pretrial Orders, 29 F.R.D. 420, 423-425 (1961). Broad discretion is not limitless, however. Since the discretionary sanctions imposed herein are among the more drastic afforded by Rule 37(b), non-compliance must be due to Selb's own fault, wilfulness or bad faith in order to justify their imposition. Societe Internationale v. Rogers, 357 U.S. 197, 212, 78 S.Ct. 1087, 1096, 2 L.Ed.2d 1255 (1958); Dorsey v. Academy Moving & Storage Inc., 423 F.2d 858, 860 (5th Cir. 1970); Bon Air Hotel, Inc. v. Time, Inc., 376 F.2d 118, 121-122 (5th Cir. 1967).
 
 
 31
 General Dynamics' interrogatories to Selb sought information relative to Selb's counterclaims which prayed for damages in excess of $10,000,000.00 for alleged breach of contract by General Dynamics and alleged defamatory statements made concerning contract cancellation. They also sought information in connection with Selb's affirmative defense of waiver, i. e., that plaintiff had waived the contractual requirement that all welds must be formally pre-authorized. Selb twice had been given opportunities to answer the interrogatories based upon its available information, and twice refused to do so-its depondent Frey having alleged "insufficient personal knowledge" in each instance. Selb's refusal to answer could do no more than work an extreme injustice on General Dynamics by requiring the latter to defend against a multi-million dollar counterclaim, and respond in litigation to certain affirmative defenses without benefit of this discovery procedure. We cannot say, therefore, based upon these circumstances, that the trial court abused its discretion by striking Selb's affirmative defenses[5] and dismissing its counterclaim.[6] See, 4A Moore's Federal Practice p 37.03 at 37-71; see generally, United States v. Hayes, 408 F.2d 932, 934-935 (7th Cir. 1969).
 
 II.
 
 32
 DISMISSAL OF BASS' COUNTERCLAIM AND STRIKING OF HIS
 
 AFFIRMATIVE DEFENSES
 
 33
 Harry Bass[7] summarily declined in writing to answer all interrogatories directed to him by General Dynamics. He based his refusal upon the Fifth Amendment right against self-incrimination.
 
 
 34
 Fed.R.Civ.P. 33(a) provides that "[e]ach interrogatory shall be answered separately and fully. . . ." The Rule is explicit that blanket refusals to answer based upon the privilege against self-incrimination are not acceptable. Accord, Capitol Products Corporation v. Hernon, 457 F.2d 541, 542 (8th Cir. 1972). The privilege must be asserted with respect to particular questions, and in each instance, the Court must determine the propriety of the refusal to testify. Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951).
 
 
 35
 As we said in Capitol Products, supra, 457 F.2d at 543, "[t]he court must determine whether the claimant is * * * confronted by substantial and 'real,' and not merely trifling or imaginary hazards of incrimination." Marchetti v. United States, 390 U.S. 39, 53, 88 S.Ct. 697, 705, 19 L.Ed.2d 889 (1968); Rogers v. United States, 340 U.S. 367, 374, 71 S.Ct. 438, 442, 95 L.Ed. 344 (1941). And, the mere "say-so" of the claimant "does not of itself establish the hazard . . . ." Hoffman v. United States, supra, 341 U.S. 479, 486, 71 S.Ct. 814, 818 (1951).
 
 
 36
 After Bass' initial refusal to answer, the trial court denied defendants' motion for a protective order to stay discovery until completion of all criminal proceedings and for an indefinite stay of trial. Defendants were then ordered under date of February 18, 1972 "to fully and completely answer each interrogatory" within twenty days or suffer dismissal of their counterclaims and have their affirmative defenses stricken. In response thereto, Bass made no attempt to explain to the trial court how his responses to each of the interrogatories, even by implication, might be incriminating. Instead, Bass issued for the second time his blanket refusal to answer. The trial court, in turn, imposed the aforementioned sanctions.
 
 
 37
 Bass suggests that as a reasonable alternative to dismissal of defendants' counterclaim and the striking of their affirmative defenses, the trial court initially should have granted defendants' protective order postponing civil discovery until all criminal proceedings had terminated. Since the granting or denial of a protective order is within the discretion of the trial court, 4 Moore's Federal Practice p 29.68 at 26-491, only an abuse of that discretion would be cause for reversal.
 
 
 38
 Fed.R.Civ.P. 26(c) requires that "good cause" be shown for a protective order to be issued. The burden is therefore upon the movant to show the necessity of its issuance, which contemplates "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements * * *." Wright & Miller, Federal Practice and Procedure: Civil Sec. 2035 at 264-65. Such determination must also include a consideration of the relative hardship to the non-moving party should the protective order be granted. See generally, United States v. Kordel, supra, 397 U.S. 1, 4-5, 90 S.Ct. 763, 765 (1970).
 
 
 39
 The interrogatories in question were filed in district court on September 8, 1971. The interrogatories were not answered, and Bass did not indicate that he would invoke the Fifth Amendment until after the district court on January 4, 1972, some three months after their jury conviction on the criminal charges, ordered defendants to respond. During this period, the civil case had been reset for trial four times. When defendants finally moved for a protective order, on February 15, 1972, they sought an order that defendant Bass not be compelled to answer the interrogatories prior to final disposition of all criminal proceedings. Had they asserted Bass' privilege with respect to particular questions, and requested that the answers be sealed, and/or that the responses be limited to use of counsel for purposes of the civil trial, such an order might well have been entered.
 
 
 40
 Defendants' request for an indefinite postponement of the civil proceedings pending the final determination of their criminal convictions was unreasonable under the circumstances. Justice must be done in both criminal and civil litigation. The rights of a defendant in a criminal case must, of course, be protected. But this does not mandate a complete disregard for the rights of civil litigants. Gordon v. Federal Deposit Ins. Corp., 138 U.S.App.D.C. 308, 427 F. 2d 578, 588 (1970); DeVita v. Sills, 422 F.2d 1172, 1178-1181 (3rd Cir. 1970); see also, United States v. Kordel, 397 U. S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970).
 
 
 41
 The record discloses that during the more than two-year interim between the filing of this lawsuit and the time defendants moved for a protective order, Selb Manufacturing and its affiliates, all owned by Bass, had rapidly declined in net worth. Under these circumstances it appears the refusal of defendant Bass to answer was an avoidance of discovery rather than a good faith claim of self-incrimination.[8]
 
 
 42
 Admittedly, the trial court's oral phraseology directing defendants to "completely and totally" answer interrogatories might have included a charge informing defendant Bass that any refusal to answer must be asserted as to particular questions. But such omission is not dispositive of the result reached herein, particularly in light of both Bass' repeated blanket refusal to respond and the defendants' unreasonable request for an indefinite postponement of proceedings in their motion for a protective order.
 
 
 43
 We cannot say that the trial court abused its discretion in ordering the imposed sanctions. We recognize that civil discovery is not intended to be a "'back door' method of accomplishing criminal discovery."[9] Cf., Campbell v. Eastland, 307 F.2d 478 (5th Cir. 1962). Nevertheless, the right to assert the privilege does not, a priori, free the claimant of the responsibility to respond in pre-trial discovery when information sought bears upon the claimant's own counterclaim and affirmative defenses. See Rubenstein v. Kleven, 150 F.Supp. 47 (D.Mass.1957); Franklin v. Franklin, 365 Mo. 442, 283 S.W.2d 483, 486 (1955); Annot., 4 A.L.R.2d 545 (1965). In Independent Productions Corporation v. Loew's, Inc., 22 F.R.D. 266, 277 (S.D. N.Y.1958), the court emphasized that the privilege must not be used as a "sword and a shield" where affirmative relief is voluntarily sought by a party. Accord, Kisting v. Westchester Fire Insurance Company, 290 F.Supp. 141, 149 (S.W.Wis.1968); Geldback Transport, Inc. v. Delay, 443 S.W.2d 120, 121 (Mo. 1969); and Levine v. Bornstein, 13 Misc.2d 161, 174 N.Y.S.2d 574 (1958); see also, Christenson v. Christenson, 281 Minn. 507, 162 N.W.2d 194, 198-203 (1968); but see, Barbato v. Tuosto, 238 N.Y.S.2d 1000, 1002 (1963). We are mindful that one who seeks affirmative relief by the assertion of a "compulsory" counterclaim, as raised herein, varies the extent of the problem, since failure to assert such a claim forever bars the action. Incidental to our consideration of this problem, however, we are likewise mindful of Bass' attempt to effectively deprive General Dynamics of an opportunity to litigate its civil claim by his conscious disregard of the duty imposed upon a litigant to respond in discovery wherever practicable. For example, we note many questions wholly devoid of incriminatory potential should have been answered without hesitation.[10] Cf., Williams v. Florida, 399 U.S. 78, 84-85, 90 S.Ct. 1893, 1897-1898, 26 L. Ed.2d 446 (1970).
 
 
 44
 In the final analysis we are convinced that Bass' noncompliance constituted the "fault," "wilfulness" or "bad faith" required to justify the dismissal of his counterclaim[11] and the striking of his affirmative defenses. See, Societe Internationale v. Rogers, supra, 357 U.S. 197, 212, 78 S.Ct. 1087, 1096, 2 L.Ed.2d 1255 (1958).
 
 
 45
 Additionally we observe that defendants have failed to convince us that they suffered substantial harm by having their affirmative defenses of waiver stricken. The trial court submitted the cause to the jury under Count I charging fraud and deceit. In so doing the jury was instructed that, among other things, General Dynamics had the burden of establishing that defendants had made false misrepresentations to it as to the absence of unauthorized welds, and that it relied on such fraudulent misrepresentations and acted reasonably in so doing. Thus plaintiff had the affirmative burden of proving that it reasonably relied on the misrepresentations of defendants that no more unauthorized welding would be done, which in effect placed the burden on plaintiff of establishing that there was no waiver by it of the requirement that all welds must be formally pre-authorized. See generally, 17A C.J.S. Contracts Sec. 493. After reviewing the record we are not persuaded that defendants have demonstrated prejudice as a result of the order striking their affirmative defense of waiver.
 
 
 46
 Finally, defendants contend that the trial court abused its discretion in refusing a stay of the civil case until final disposition of all criminal proceedings. The trial court denied the request and directed that the civil trial would proceed some two months later on May 1, 1972, as previously ordered. No further motions to delay the trial were made and the trial proceeded as scheduled with the jury returning its verdict on May 16, 1972. There is no question but what in some cases the risk of selfincrimination may require a postponement of civil proceedings until the criminal case is completely disposed of. United States v. Kordel, supra, 397 U.S. 1, 9, 90 S.Ct. 763, 768 (1970). Appellant Bass contends such is the case at hand; that his was the Hobson's choice: either to yield up his right against selfincrimination and answer the interrogatories and proceed to trial, or to invoke his right against self-incrimination and suffer the permanent loss of his affirmative defenses and his counterclaim and his right to a proper defense at trial. Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967); Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). Selb contends its affirmative defenses and much of its counterclaim are the same as Bass' and therefore it too should be granted a new trial.
 
 
 47
 We have already indicated that on balance it is our view that the trial court did not abuse its discretion in striking the affirmative defenses and counterclaims. The matter of being required to proceed to trial is more troublesome. Bass' privilege against self-incrimination is entitled to protection. But that does not necessarily mandate a halt in the civil proceedings. It has been properly said that "[t]he court, in its sound discretion, must assess and balance the nature and substantiality of the injustices claimed on either side." Gordon v. Federal Deposit Ins. Corp., supra, 138 U.S.App.D.C. 308, 427 F.2d 578, 580 (1970). Here both Selb and Bass had been convicted of conspiring to defraud the United States by fraudulent representations for the purpose of passing off on General Dynamics (general contractor), and ultimately the Air Force, unacceptable component parts for the F-111 aircraft as acceptable parts. Bass did not testify in his criminal trial. Our records disclose that neither Bass nor Selb attacked the sufficency of the evidence to support the finding of guilt on the conspiracy count.[12]
 
 
 48
 Here we have situation where Bass had been found guilty beyond a reasonable doubt of making false misrepresentations to the Air Force (General Dynamics, the prime contractor) involving the subject matter of the civil litigation. It is true that the case was being appealed and to that extent the criminal proceedings were not final. But the trial court also had to weigh the injustice to General Dynamics. The net worth of Selb and its affiliated companies (all solely owned by Bass) had been declining markedly. The litigation had already been pending over 2 years. Many employees of the companies involved had departed. With the passage of time the testimony of witnesses would be lost. Indeed, in the case at hand, we have an example of what happens when litigation is long delayed, the defendant Bass is now deceased. His testimony, if it were ever to be given, is now foreclosed.
 
 
 49
 We believe the entire matter of discovery and trial could have been handled in a manner which would have comported with justice for both sides. Answers to interrogatories could have been sealed except for the use of the parties and their counsel in the civil litigation.[13]
 
 
 50
 The civil trial could have proceeded under court imposed orders that would have restricted Bass' testimony to the civil proceedings, if such were necessary to protect his rights. The cooperation of counsel with the court in this regard would have obviated the troublesome problem here presented.
 
 
 51
 We are faced with the difficulty of determining whether there was an abuse of discretion by the trial court that resulted in prejudice to the rights of the defendants in the defense of the civil suit and the prosecution of their counterclaims. We conclude after a full consideration of the record that the trial court under the circumstances did not abuse its discretion in striking the affirmative defenses and counterclaim, and in ordering the long delayed trial to proceed.
 
 APPLICABLE LAW
 
 52
 In determining that this action sounded in tort, the trial court properly looked to the allegations as set forth in Count I of General Dynamics' complaint. Service Construction Company v. Nichols, 378 S.W.2d 283, 288 (Mo. App.1964); accord, National Discount Corp. v. O'Mell, 194 F.2d 452, 454-455 (6th Cir. 1952); see generally, Stewart v. Shanahan, 277 F.2d 233, 236 (8th Cir. 1960). Since the complaint clearly evinces an action based upon the theory of fraud, and includes a prayer for punitive damages, it is our view that the trial court appropriately labeled this action as sounding in tort. See, Hilderbrand v. Anderson, 270 S.W.2d 406, 410-411 (Mo.App.1954). This being so, it is necessary to decide whether the trial court was correct when it determined that Texas substantive law would govern this lawsuit. Such determination requires an examination of the tort conflict of laws rule of the forum. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Griffin v. McCoach, 313 U.S. 498, 61 S.Ct. 1023, 85 L.Ed. 1481 (1941).
 
 
 53
 In Kennedy v. Dixon, 439 S.W. 2d 173 (Mo.1969), the Missouri Supreme Court, sitting en banc, suggested that the rule of lex loci delicti, heretofore followed in Missouri, which applies the substantive law of the state where the tort occurred, should be abandoned in favor of the "most significant contracts" rule. Id. at 184. Since the decision on this point was rendered by an evenly divided court,[14] the precedential value of Kennedy may be questionable. But see, Griggs v. Riley, 489 S.W.2d 469 (Mo. App.1972). In any event, we are satisfied that Missouri would accept the substantive law of Texas under either rule as the body of law which creates the action being asserted. In the first instance, Texas law clearly applies under the rule of lex loci delicti. Similarly, we recognize Texas as having the requisite significant relationship to the occurrence to warrant application of its tort law in accord with the Kennedy decision. Applicable guidelines stated in Restatement (Second) of Conflicts Sec. 145 (1969) support this view. See, Kennedy, supra, 439 S.W.2d at 181. That is, the alleged injury occurred in Texas, the alleged misrepresentations were made in Texas, Arkansas and Missouri, and General Dynamics' manufacturing site of the F-111 was located in Texas, which, in effect, is the focal location of the relationship between the parties.
 
 
 54
 Under Texas law, where breach of an express contract gives rise to an actionable tort, the injured party may recover upon the tort theory. See, e. g., Sherrard v. After Hours, Inc., 464 S.W.2d 87 (Texas 1971); Export Insurance Company v. Herrera, 426 S. W.2d 895 (Texas 1968). Such a claim arising under the substantive law of a sister state is actionable in the forum state, so long as enforcement of the foreign law would not be repugnant to the public policy of the forum. See, e. g., Griggs v. Riley, supra, 489 S.W.2d 469, 472 (Mo.App.1972).
 
 
 55
 Under Missouri law, the trend appears to favor the theory that a tort action arising from a breach of contract may be brought only if the duty owed is superimposed by operation of law as an incident of the relationship between the parties rather than the contract. See, Fingers v. Mount Tabor United Church of Christ, 439 S.W.2d 241 (Mo.App. 1969); State ex rel. Cummins Missouri Diesel Sales Corporation v. Eversole, 332 S.W.2d 53, 57-58 (Mo.App.1960). However, Missouri appears willing to allow a litigant to maintain an action for fraud and recover punitive as well as actual damages where the duty breached is exclusively incidental to the contract. See, Throckmorton v. M.F.A. Central Cooperative, 462 S.W.2d 138 (Mo.App.1970); Byers Bros. Real Estate & Ins. Agency, Inc. v. Campbell, 353 S.W.2d 102 (Mo. App.1961). There are other situations which may be compared with this position. Cf., Stambaugh v. Wedlan, 371 S. W.2d 361, 363 (Mo.App.1963); Harzfeld's Inc. v. Otis Elevator Co., 114 F. Supp. 480 (W.D.Mo.1953). We are satisfied that application of Texas substantive law in this instance would not contravene the public policy of the forum.IV.
 
 
 56
 COUNT I OF COMPLAINT STATED CLAIM FOR RELIEF SOUNDING IN TORT
 
 
 57
 Defendants next assert that only one claim has been asserted by General Dynamics which involves two distinct theories-tort and contract. Defendants suggest that since General Dynamics dismissed Count II (sounding in contract), and since no foundation existed for litigating this cause upon a tort theory, reversal of this judgment should be outright rather than accommodating General Dynamics with a second opportunity to relitigate upon a contract theory.
 
 
 58
 Our discussion under the previous heading is dispositive of this assertion. Defendants' argument has no merit since it is abundantly clear that General Dynamics' Count I sufficiently stated a claim for relief sounding in tort.[15]
 
 V.
 RULINGS OF THE TRIAL COURT
 
 59
 Over defendants' objection, the trial court instructed the jury that a former employee of either corporate party was equally available to both parties and therefore the jury could draw no inference from the failure of a party to call such a witness that his testimony would have been unfavorable to that party.
 
 
 60
 Nothing in this record indicates that former employees were not equally available to both parties. Both Selb and Bass were provided with the names and last known addresses of General Dynamics' former employees. Defendants, however, did not seek discovery as to these employees. By its instruction, the trial court correctly expressed the law of this Circuit as first enunciated in Schoenberg v. Commissioner of Internal Revenue, 302 F.2d 416, 420 (8th Cir. 1962) where in the court states:
 
 
 61
 "We have serious doubt whether in a situation such as is presented here, where the witness was apparently available to both parties, any presumption should flow from the failure of either party to call such witness. Any rule creating such a presumption from failure to produce a witness must be applied with caution."
 
 
 62
 Jenkins v. Bierschenk, 333 F.2d 421, 425 (8th Cir. 1964); accord, United States v. Higginbotham, 451 F.2d 1283, 1286 (8th Cir. 1971); Wilson v. United States, 352 F.2d 889, 892 (8th Cir. 1965).
 
 
 63
 Defendants next suggest that the trial court erred when it allowed into evidence over their objection a motion picture depicting characteristics of the F-111. Defendants' objection was grounded upon relevancy and materiality. The trial court determines whether such evidence is admissible as a matter of its sound discretion. B. Jones, The Law of Evidence Sec. 17.52 at 360 (6th Ed. 1972); compare, State Farm Mutual Automobile Ins. Co. v. Jackson, 346 F.2d 484, 491-492 (8th Cir. 1965); with Pritchard v. Downie, 326 F.2d 323, 326 (8th Cir. 1964). We are not persuaded that any such discretion was abused. The motion picture demonstrated the various flight performance characteristics of the F-111 which, in connection with the testimony of an Air Force pilot called as a witness by General Dynamics, sought to enable the jury to understand more fully the critical nature of the parts manufactured by defendants. Such content and purpose clearly establishes the relevancy of this demonstrative evidence.
 
 
 64
 Defendants lastly urge that the trial court erred when proffered evidence of unauthorized weld repairs by other vendors was ruled inadmissible. The trial court found that the proposed evidence had no probative value with any issue presented. The trial court necessarily has considerable discretion in ruling on the admissibility of evidence. General Insurance Co. of Amer. v. Hercules Construction Co., 385 F.2d 13, 25 (8th Cir. 1967). We find no abuse of discretion in this regard.
 
 
 65
 The decision of the trial court is affirmed in all respects.
 
 
 66
 Affirmed.
 
 
 
 *
 On March 13, 1973 by appropriate order of this Court, Marie M. Bass, Administratrix of the Estate of Harry C. Bass, Jr., deceased, was substituted as party appellant in lieu of Harry C. Bass, Jr
 
 
 [1]
 See, Wright & Miller, Federal Practice and Procedure: Civil Sec. 2018 at 143, where the author states that "the case is unlikely ever to arise since Rule 33(a) allows any agent of the corporation, even its attorney, to answer interrogatories on behalf of a corporation."
 
 
 [2]
 Bass was then on appeal from his jury conviction on two counts: conspiring to defraud the United States by fraudulent representations of passing off on General Dynamics, and ultimately the Air Force, unacceptable parts for the F-111 aircraft, and the substantive offense of making false and fraudulent representations to the Air Force; Selb was on appeal from conviction on the conspiracy count, 472 F.2d 207 (8th Cir. 1973); Fischer had plead nolo contendere in the criminal case
 
 
 [3]
 See, 74 Harv.L.Rev. 940, 1026-27 (1961); see also, 4A Moore's Federal Practice p 33.26 at 33-143 and n. 12; cf., Riley v. United Airlines, 32 F.R.D. 230, 233 (S.D.N.Y.1962)
 
 
 [4]
 See, Wycoff v. Nichols, 32 F.R.D. 370, 372 (W.D.Mo.1963); and see generally, Hickman v. Taylor, 329 U.S. 495, 504, 67 S.Ct. 385, 390, 91 L.Ed. 451 . . ., (1947), "A party clearly cannot refuse to answer interrogatories on the ground that the information sought is solely within the knowledge of his attorney."
 
 
 [5]
 The other affirmative defenses, stricken were: Failure to state a claim upon which relief can be granted; deprivation of due process of law in refusing to transfer the cause to Arkansas pursuant to Title 28 U.S.C. Sec. 1404. We deem the striking of the affirmative defense of waiver as being the only one worthy of consideration. It will be discussed further in connection with striking the affirmative defenses of Bass
 
 
 [6]
 See, 74 Harv.L.Rev. 940, 991 (1961): "Although broad discretionary powers in administering the discovery sanctions seem properly entrusted to trial judges, it would appear that the overemphasis on the desirability of reaching the merits of a controversy has somewhat impaired the just operation of the discovery process." (footnote omitted)
 
 
 [7]
 Harry C. Bass passed away February 15, 1973, approximately one month before this case was argued to this Court, and while his criminal appeal was pending before this Court on petition for rehearing of his affirmed conviction. See, United States v. Bass, supra, 472 F.2d 207 (8th Cir. 1973). By reason of his death, the criminal cause is abated. We therefore entered an order, dated April 18, 1973, vacating the judgment of the district court and remanding the case with directions to dismiss the indictment. See, Durham v. United States, 401 U.S. 481, 91 S.Ct. 858, 28 L.Ed.2d 200 (1971)
 
 
 [8]
 See, 1970 Wash.U.L.Q. 371, 376
 
 
 [9]
 3 U.S.F.D.Rev. 12, 31 (1968), and see generally, 66 Mich.L.Rev. 738, supra, 742-43 (1968)
 
 
 [10]
 Among the interrogatories were innocuous questions asking Bass to state:
 (1) the date and state of incorporation of Selb Manufacturing Company.
 (2) Selb's principal place of business.
 (3) the amount of damages suffered by defendant based upon allegations in defendant's counterclaim.
 (4) the identification of expert consultants.
 
 
 [11]
 We do not reach the question of which state's law would govern Bass' counterclaim for defamation pursuant to the law of the forum state. We note, however, that under Missouri law, a defamation action abates upon the death of the injured party. Vernon's Ann.Mo.Stat. Sec. 537.030 (1953)
 
 
 [12]
 Bass did claim on his appeal that the evidence was insufficient to support his jury conviction on the substantive count which charged Bass and others with making false and fraudulent representations to the Air Force by fraudulent misapplication of serial numbers on aircraft parts and falsely representing that the aircraft parts met required specifications when they knew the parts were unacceptable. This court found there was ample evidence indicating that Bass took an active part in the business and knew about and participated in the fraud on the Government. 472 F.2d at 212
 
 
 [13]
 This problem becomes more difficult in those cases where the Government is a party in both the civil and criminal litigation, such as often happens in criminal and civil antitrust cases. See, 66 Mich. L.Rev. 738, 742-743 (1968), but note cases cited therein at n. 29
 
 
 [14]
 Only six members of the seven-member court participated in the decision. Although the panel vote was 4 to 2, one of the majority judges concurred in the result only and indicated that he would not abandon the lex loci delicti rule for the present
 
 
 [15]
 See discussion under Sec. III. Applicable Law, supra