DAVENPORT GRAIN CO., Plaintiff,

v.

J. LYNCH & COMPANY, INC., et al., Defendants.

RYDAL GRAIN CO., Plaintiff,

v.

J. LYNCH & COMPANY, INC., et al., Defendants.

Nos. CV83–L–405, CV84–L–197.

United States District Court,
D. Nebraska.

April 19, 1985.

John W. Herdzina of Abrahams, Kaslow & Cassman, Omaha, Neb., for Scoular Grain Co.

Colvin A. Peterson, Jr., and James F. Duncan of Watson, Ess, Marshall & Enggas, Kansas City, Mo., and Cline Williams, and Fredric H. Kauffman of Wright, Johnson & Oldfather, Lincoln, Neb., for Bunge Corp.

Thomas E. Johnson of Baird, Holm, McEachen, Pederson, Hamann & Strasheim, Omaha, Neb., and Justice B. King of Fisher, Patterson, Sayler & Smith, Topeka, Kan., for Wright-Lorenz Grain Co., Inc.

John T. Conlee of Fleeson, Gooing, Coulson & Kitch, Wichita, Kan., and Robert A. Barlow of Barlow, Johnson, DeMars & Flodman, Lincoln, Neb., for Morrison Grain Co., Inc.

Gus Svolos, Vice President, Chicago, Ill., and Kenneth C. Stephan, and John R. Hoffert of Knudsen, Berkheimer, Richardson & Endacott, Lincoln, Neb., and Thomas R. Conklin, Gen. Atty., Topeka, Kan., and Edward M. Glennon, Minneapolis, Minn., and M.E. Nelson, Jr., Gen. Counsel, and M.W. Blaszak, Asst. Gen. Atty., Chicago, Ill., for Atchison, Topeka and Santa Fe Railway.

## MEMORANDUM AND ORDER

DAVID L. PIESTER, United States Magistrate.

Michael McCormack of McCormack, Cooney, Mooney & Hillman, Omaha, Neb., and M.J. Bruckner of Marti, Dalton, Bruckner, O'Gara & Keating, Lincoln, Neb., and John Herdzina of Abrahams, Kaslow & Cassman, Omaha, Neb., and Joseph J. O'Malley, Laura Lindgren, and George R. Pitts of Paul, Hastings, Janofsky & Walker, Los Angeles, Cal., and Murray Ogborn of Nelson & Harding, Lincoln, Neb., for plaintiffs, Davenport Grain Co., and Rydal Grain Co.

Ralph J. Savarese, and Margaret M. Zwisler of Howrey & Simon, Washington, D.C., and Robert J. Fulgency, Robert C. Maltzah, General Mills, Inc., Minneapolis, Minn., and A. Todd, Jr. of Bailey, Polsky, Cada & Todd, Lincoln, Neb., for J. Lynch & Co., Inc.

By filing 115, the defendants J. Lynch & Company, Inc., Agrex, Inc., Scoular Grain Company, Bunge Corporation, Morrison Grain Company, Inc., and Wright-Lorenz Grain Co. seek to impose sanctions upon the plaintiffs in these cases pursuant to Rule 37(b)(2), Fed.R.Civ.P., for the plaintiffs' failure to adequately answer interrogatories propounded by these defendants. The defendant Atchison, Topeka and Santa Fe Railway Company has not joined in the motion.

At issue are the plaintiffs' positions regarding interrogatories 1 through 7 of these defendants' First Set of Interrogatories. These interrogatories were served upon the plaintiff Davenport on March 30,

1984 and upon plaintiff Rydal on August 9, 1984.

The plaintiffs' complaints in these actions may be described generally as alleging that the defendants were engaged in a conspiracy to improperly obtain from the defendant Atchison, Topeka and Santa Fe Railway an eighteen-cent discount off the normal tariff freight rate for transporting grain from the Santa Fe Transit Station in Salina, Kansas to other points, by falsely reporting that grain shipments had been trucked by motor vehicle from Superior, Nebraska to Salina, Kansas. Plaintiffs allege that the improper allowance of the eighteen-cent discount resulted in the defendants being able to offer a better price to sellers of grain in the market area, thereby depriving the plaintiffs of business they would have otherwise received, in violation of Sections 1 and 2 of the Sherman Act, the Robinson-Patman Act, and the Interstate Commerce Act. The interrogatories in question seek information from the plaintiffs regarding each specific instance or transaction giving rise to the plaintiffs' claims, including the identities of the sellers, the defendants involved, the dates and commodities involved, the difference in prices, the amount of the truck allowance received from the defendant Santa Fe Railway, the specific amounts of damages suffered as a result of each of the claimed violations of the various statutes, the period of time each item of damage was accrued, and the identity of documents relevant to the various aspects of the previous questions.

The plaintiff Rydal never responded to these interrogatories, either by way of objections or answers served within the 30 day period permitted by Rule 33(a), Fed.R.Civ.P., or at any time since the expiration of that time period.

Likewise, the plaintiff Davenport did not object to the interrogatories within the 30 day answer period, nor did it make any response in the way of an answer to the interrogatories. Rather, on June 1, 1984, several weeks late, it served its answers to the interrogatories. (See filing 91, attachment B.) In its answers Davenport claimed that it was unable to provide much of the information sought by the interrogatories because, *inter alia*, "the defendants have steadfastly refused to answer interrogatories or to produce documents pertaining to anything prior to June 30, 1979," and because the defendant Agrex had refused to give plaintiff information concerning disallowed truck substitution allowances Agrex had repaid Santa Fe. Davenport did, however, agree to permit defendants to inspect its records pursuant to Rule 33(c), Fed.R.Civ.P. Although with respect to specific instances of improper use of the truck substitution allowance, the plaintiff referred to documents, there was no attempt to specify any particular amount of damage as having accrued from any instance of misuse of the allowance, and no attempt to disclose, although specifically requested to do so, the basis of the plaintiff's claim of $1,504.000 in sustained damages, nor $2,000,000 in future damages, as claimed in the complaints. On July 11, 1984 these defendants filed a motion to compel further answers to interrogatories, including in the motion the interrogatories here in question. (See filing 91.) Shortly before, on July 2, 1984, the plaintiff had filed a motion to compel the production of documents from the defendants, filing 89.

The plaintiff did not respond in any way to the defendants' motion to compel further answers to these interrogatories. On August 15, 1984 I entered an order granting the defendants' motion in part, stating,

I agree with the defendants that the plaintiff's answers are not satisfactory, but it appears from the responses that have been provided that this is a result of the plaintiff not yet knowing the answers, as opposed to taking evasive action. At least, I will give the plaintiff the benefit of that doubt, in the absence of a showing to the contrary, for a limited period of time before requiring answers.

At that time regarding the plaintiff's reference to its records under Rule 33(c), I stat-

ed that I was unable to make a firm determination on the appropriateness of that reference in view of the lack of an adequate record on the motion, but I allowed the plaintiff to rely upon its records, so long as it provided the defendants "direct access" to them and "guidance" in assuring that all applicable records were made available. I directed that the plaintiff provide supplemental answers to these interrogatories within 90 days, which would have been approximately November 13, 1984, depending upon service of the order.

By the same order I addressed the plaintiff's contentions about the defendants' refusal of records predating June 30, 1979, concluding that discovery of such records was permissible, and granting the plaintiff's motion to require production of such documents to the extent that they related to the plaintiff's claims of fraudulant concealment, conspiracy, and damages. I declined to rule in that order on the partys' arguments over the amounts of disallowed truck substitutions repaid by Agrex to the Santa Fe Railway, but specifically noted in the memorandum that, following counsel's unsuccessful efforts to resolve the matter pursuant to Local Rule 20I, it could be brought back before me if necessary. I also declined ruling on some of the other matters raised by the plaintiff's motion, for lack of an adequate showing by the parties to resolve them but limited the scope of the plaintiff's requests and granted the motion to compel in part. (See, filing 95.)

No appeal of my order of August 15, 1984 was filed. No motion was filed seeking reconsideration or clarification of any of its provisions. No motion was filed seeking to bring back to the court for resolution any of the matters specifically reserved by that order.

November 13, 1984 came and went without any indication in the court file that the plaintiff had complied with the order of August 15, 1984. Moreover, no motion was filed seeking an extention of time within which to comply with that order.

On February 5, 1985 at a conference with counsel in this matter, counsel for the de-

fendants took the position that they were unable to assist in the formulation of a plan to complete the discovery and prepare these matters for trial until such time as they plaintiffs complied with the court's order directing answers to these interrogatories. Counsel for the plaintiffs, on the other hand, took the position that the defendants' requests were no longer necessary, since the plaintiffs would not be relying on specific instances of damages, but rather upon their experts' testimony in computing damages. At that time the court continued the scheduling conference and directed the plaintiffs to make their experts available for deposition following the completion of their reports, before May 1, 1985. That same day plaintiff Davenport submitted to the court a "Response to Memorandum and Order dated August 15, 1984." Although it was submitted to the clerk for filing, because it was in the nature of a brief, it was not filed. In it the plaintiff states that "it must continue to adhere to its original answers" to these interrogatories, arguing that they are overly broad, burdensome and not reasonably calculated to lead to the determination of plaintiff's damages, and that the requests are "unreasonable," as the plaintiff cannot categorize all the information requested. It should be noted that, other than the plaintiff's first response to the interrogatories, this was the plaintiff's first indication of any objection to the interrogatories, and was the plaintiff's first indication ever of its position that the defendants' requests for information were, in effect, irrelevant.

The present motion was not filed until March 11, 1985, despite discussion of the apparent impasse during the conference of February 5, 1985.

In response to the motion plaintiffs raise the following arguments: first, that plaintiff Rydal has not failed to comply with a court order directing discovery, thereby making sanctions pursuant to Rule 37(b)(2) inappropriate as to it; second, that because of the logistical impossibility of responding more fully to the defendants' interrogatories, the plaintiff Davenport is not guilty of

any wilfulness, bad faith, or fault such as would justify the sanction of dismissal; third, that the plaintiffs' proof of damages will be in the form of expert testimony, not as a compilation of individual transactions, as contemplated by the defendants' interrogatories; and fourth, that monetary sanctions are not available because plaintiffs' position is "substantially justified." I find each of these arguments to be without merit.

■ It is true, as plaintiffs argue, that the imposition of sanctions under Rule 37(b)(2) requires that an order first have been entered directing the delinquent party to comply, and also that in this instance the defendants cite only Rule 37(b)(2) as authority for the pending motion. It is also true, however, as argued by the defendants in their reply brief, that Rule 37(d) makes no requirement of a prior order in those instances in which a party fails to object or answer interrogatories, exactly the situation here with the plaintiff Rydal. In light of the reference in Rule 37(d) to the sanctions in Rule 37(b)(2), I do not look upon the defendants' failure to cite Rule 37(d) as an omission precluding the imposition of sanctions upon plaintiff Rydal.

■ To the extent that the plaintiffs claim to be unable to answer the defendants' interrogatories, the record available to me indicates that such "inability" is not the result of good faith efforts to eliminate it. As noted above, at the time of my order of August 15, 1984 I gave the plaintiff the "benefit of that doubt" referring to the defendants' claim that Davenport's responses were evasive. I limited the granting of that "benefit" however, and gave the plaintiff, in the same order, the means by which to overcome it by granting its motion to compel and providing for a reconsideration of other matters raised by the plaintiff upon which I was unable to rule at that time because of lack of sufficient facts. There has never been any indication from the plaintiff that those measures were inadequate to overcome its "inability." Furthermore, there has never been any evidentiary showing of logistical im-

possibility, either by way of asserting a timely objection or by responding to the motion to compel. The failure to request any reconsideration of the August 15, 1984 order, or to appeal it, or to seek an extension of time in which to comply with it, not to mention the complete disregard of the date for compliance, and the failure to do anything regarding the order until directed to appear before the court at a scheduling conference February 5, 1985, can only be viewed as the results of conscious decisions by plaintiffs and/or plaintiffs' counsel. There is absolutely nothing in the record to indicate that the failure of the plaintiffs to comply is in any way caused by the failure of good faith efforts to do so.

■ It is true, as argued by the plaintiffs, that in an antitrust action the plaintiff need prove only some damage resulting from the antitrust violations, and that the actual calculation of damages may be the result of experts' computations on market shares and other factors, but need not be limited to a precise calculation of damages arising from each specific event claimed to violate the antitrust laws. *Zenith Radio Corp. v. Hazeltine Research*, 395 U.S. 100, 114 n. 9, 89 S.Ct. 1562, 1571 n. 9, 23 L.Ed.2d 129 (1969); *In re Plywood Antitrust Litigation*, 655 F.2d 627 (5th Cir. 1981), *cert. dismissed* 462 U.S. 1125, 103 S.Ct. 3100, 77 L.Ed.2d 1358 (1983); *Malcolm v. Marathon Oil Company*, 642 F.2d 845, 858 (5th Cir.), *cert. denied* 454 U.S. 1125, 102 S.Ct. 975, 71 L.Ed.2d 113 (1981). It does not follow from that proposition, however, that the defendants should be precluded from inquiring into the specific instances alleged to give rise to claims of damages, so as to utilize the resulting information in defense of the plaintiffs' claims. Plaintiffs cite no authority to that effect, and I have found none. Thus, the plaintiffs' argument as to relevance, in addition to being untimely asserted, fails to address the issue from the perspective of the defense.

■ Plaintiffs also argue that the sanction of dismissal should not be imposed under the present circumstances, in that

courts have been reluctant to dismiss cases for violation of discovery orders, except in the most flagrant of discovery abuses, citing *National Hockey League v. Metropolitan Hockey Club, Inc.,* 63 F.R.D. 641 (E.D. Pa.1974), *rev'd* 531 F.2d 1188 (3rd Cir. 1976), *rev'd* 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976); *Lorin Corp. v. Goto and Co., Ltd.,* 700 F.2d 1202 (8th Cir.1983); and *General Dynamics Corp. v. Selb Manufacturing Co.,* 481 F.2d 1204 (8th Cir. 1973), *cert. denied* 414 U.S. 1162, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974). I agree with the plaintiffs that, at least at the present stage of these cases, the plaintiffs have not been so abusive as to require dismissal, so long as the defendants can be provided the information without causing undue delay or prejudice. There is a strong policy in favor of resolving disputes on their merits and against depriving a party of its day in court by dismissing a case as a sanction for discovery abuse. *Fox v. Studebaker Worthington, Inc.,* 516 F.2d 989, 996 (8th Cir. 1975). That is particularly true where, as here, plaintiffs have not been forewarned that their refusal to provide discovery may result in dismissal. *Compare, National Hockey League v. Metropolitan Hockey Club, Inc.,* 63 F.R.D. 641. That is not to say, however, that some lesser sanction is not called for by the plaintiffs' conduct in these matters.

■ In considering whether to impose some lesser sanction, I consider the following factors: the extent of culpability of the plaintiffs; the extent of the harm suffered by the defendants and the delays caused in the progression of the cases; the purposes and effects of sanctions; and the desire to avoid punishing parties for the misconduct of their counsel.

As is apparent from the foregoing discussion, the plaintiffs' refusal to provide the requested information must be characterized as wilful, particularly when it is in complete and utter disregard of an order of this court. *See e.g. Ohio v. Arthur Andersen and Co.,* 570 F.2d 1370 (10th Cir.1978) (enforcement of the rules requires sanctions for disobedience of valid court orders), *cert. denied* 439 U.S. 833, 99 S.Ct. 114, 58 L.Ed.2d 129 (1978). The plaintiffs did not object to the interrogatories, and to the extent that their present opposition could be construed as an objection, it is without merit. Thus, the interrogatories and the information they request are not improper or irrelevant. This factor weighs heavily in favor of imposition of a drastic sanction upon the plaintiffs.

■ Regarding harm, the defendants contend that they desperately need the information requested, and it appears that it is relevant, or may lead to the discovery of admissible evidence. The defendants have not argued, however, that they have been severely prejudiced at the present time. It may be that if the trial were imminent, defendants would suffer great prejudice by not receiving the requested information. However, at this time the trial date has not yet been set,[1] and as noted earlier in this memorandum, some of the delay in bringing the matter to the court must be acknowledged as defendants' responsibility for failing to pursue it diligently. Neither side has argued the adequacy of the plaintiffs' reference to its records, and its allowance of access to them under Rule 33(c). It thus appears from the circumstances before me that any harm suffered by the defendants can be overcome if they are provided the information requested without further delay so as to alleviate any resulting prejudice.

■ Consistent with the goal of resolving cases on the basis of their merit, the purposes of imposing a sanction at this point should be to obtain compliance with the discovery request, as quickly as possible, with as little prejudice to the defendant as possible, while deterring future miscon-

---

1. During the conference February 5, 1985 I indicated to counsel for all parties that it was my contemplation to set the trial date for the March, 1986 jury term of this court. No one at that time expressed serious disagreement with that projection, although it has not been set forth in an order. The delay in resolving this matter has directly affected the scheduling of the cases, though it remains yet to be seen whether it will effect the schedule itself.

duct, and moving the case forward. In my consideration of this matter I have attempted to balance these factors. If trial were imminent or if the defendants had been severely prejudiced by the plaintiffs' conduct, I would seriously consider an order in the nature of a preclusion order which would establish "none" as the answer to each of the interrogatories in question; although, contrary to the defendants' assertions, this would not automatically destroy the plaintiffs' case, it would certainly be strong defensive evidence, and would be required to overcome the prejudice caused by the plaintiffs' refusals. However, in light of the present posture of the case and the lack of a showing of prejudice, in addition to my consideration of the additional factor discussed below, I am unwilling to impose this sanction at this time. While it is my conclusion that the plaintiffs' conduct deserves harsh treatment, I am of the view that remedial measures should be attempted first.

■ I have noted earlier in this memorandum that the failures to comply with the discovery requests and with the court's order can only be viewed as the result of a considered choice, either by plaintiffs or by plaintiffs' counsel. It would certainly appear that in matters of this kind most clients would rely upon the judgment of their counsel in determining what course of action to take. No arguments have been made nor affidavits filed which would indicate that these choices were made by other than counsel in the matter here in question, and under those circumstances I do not believe that the plaintiffs themselves should be penalized. From the discussion above it is clear that I do not find the plaintiffs' arguments in this matter to be "substantially justified" so as to avoid the imposition of fees and expenses in bringing the matter to the court. Rules 37(b)(2), 37(d), Fed.R.Civ.P. Because of my view that the decisions made in the plaintiffs' conduct were in all likelihood made by counsel alone, I will impose those expenses and fees upon counsel alone, although it is distressing to do so. In the event that my present view is shown to be incorrect, I will reconsider the question of who should bear these costs.

Considering all of the factors discussed above, it appears to me most appropriate at this stage to give the plaintiffs yet one more opportunity to comply with the court's order of August 15, 1984. It will be a brief opportunity, however, and will likely require the plaintiffs to engage in extraordinary measures to overcome the effects of their past delinquency. I believe it necessary to require prompt action so as to prevent this dispute from delaying the further preparation of these matters for trial. If the plaintiffs look upon the time limitation imposed by this order as unduly restrictive, I will consider extending it, but only upon a strong showing that despite the use of extraordinary efforts to comply, compliance is impossible. It should also be clear that failure of the plaintiffs to comply with this order will result in the imposition of serious sanctions, and although I cannot prejudge whatever circumstances may be presented to me at that time, I can state that a recommendation for dismissal would be foremost among the sanctions considered. Accordingly,

IT THEREFORE HEREBY IS ORDERED:

1. The defendants' motion, filing 115, is granted in part, and each plaintiff shall serve the defendants with complete answers to interrogatories 1 through 7 of the defendants' first set of interrogatories, within 30 days of the date of this order.

2. The defendants are hereby granted their expenses and fees in bringing this matter to the court. Such expenses and fees shall be paid by plaintiffs' counsel, and shall not be charged to their clients in any way. In the event that counsel are unable to agree on the amount of expenses and fees to be awarded, the defendants are hereby given 30 days from the date of this order in which to file their application for such fees and expenses, together with supporting affidavits, and to submit a brief in support thereof to the undersigned. Plaintiffs' counsel are hereby given 30 days

thereafter in which to file and submit their responses. In the event either side wishes to request a hearing, such a request should be included in the application or the response, as applicable.